STATE OF CONNECTICUT *v.* KENT E. STODDARD.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 6—decided May 1, 1940.

*Albert Lévitt,* for the appellant (defendant).

*Hugh M. Alcorn, Jr.,* with whom was *John P. Hodgson,* assistant state's attorneys, and, on the brief, *Hugh M. Alcorn,* state's attorney, for the appellee (the state).

HINMAN, J. Chapter 107a of the 1935 Cumulative Supplement to the General Statutes provided (§ 797c) for the appointment of a milk administrator with extensive powers, detailed in § 800c, to regulate the milk industry of the state and, in § 801c as amended by § 493d of the 1937 Supplement, that "Said administrator shall have power to establish, from time to time, a minimum price for the different milk areas of the state for each class and grade of milk or milk products sold to dealers and shall have power to define the number and type of classes of milk for the purposes of this chapter. To stabilize specific markets, he shall also have power to establish, from time to time, in any market area, a minimum price for a fixed time for each class and grade; (a) to be paid to the producers; (b) to be paid, at wholesale or retail, by consumers; such minimum wholesale and retail prices to cover sales by dealers and licensees, other than stores, to consumers; (c) to be paid to dealers and licensees by stores and other wholesale purchasers, including such price for sales to other dealers or licensees who are shippers or distributors; (d) to be paid to stores by consumers; (e) to be paid to dealers and licensees by sub-dealers or store dealers; (f) to be paid to dealers by other dealers." In 1937 it was provided, further (§ 494d): "In establishing minimum prices for milk under the provisions of section 801c, the milk administrator shall take into consideration the type of container used and other cost factors which should influence the determination of such prices." The act contained no other provision controlling the administrator in fixing minimum prices. Pursuant to a provision in § 800c(f) the milk administrator passed a rule or regulation, designated ruling No. 85, defining various market areas, in which the town of Glastonbury was allocated to the area designated as the Hartford Area,

and under § 801c as amended he passed a rule, effective July 1st to October 31, 1938, inclusive, designated as ruling No. 101, fixing minimum prices for the various grades and classes of milk in the several areas, wherein the minimum retail price of Grade B milk in quart bottles delivered to consumers in the Hartford Area was fixed at fourteen cents per quart. The information in this case, amplified by bill of particulars, charged that the defendant Stoddard violated rule and regulation No. 101, in that, on or about August 1, 1938, he sold Grade B milk to each of four named residents of Glastonbury at a price less than the fourteen cents per quart fixed thereby. After demurrer overruled trial was had and judgment of guilty rendered.

One of the numerous claims of law advanced by the defendant by demurrer and on the trial and under assignments of error on this appeal is that § 801c as amended by § 493d is an illegal delegation of the legislative powers to an administrative official in that it gives him uncontrolled power to fix prices of milk according to his unregulated discretion, and thus violates the Connecticut Constitution, Article Second, Article Third, Section 1, and Article First, Section 10, and the Fourteenth Amendment of the Constitution of the United States. The defendant concedes that the General Assembly may by proper legislation regulate the sale of milk and milk products in the state. The validity of such statutes, enacted to remedy conditions imperiling a state milk supply and dairy industry, and affecting the health and prosperity of the public has been definitely settled, as has the admissibility of adequate provision therein for the fixing of prices of milk and milk products by a milk control board or equivalent agency. *Nebbia* v. *New York*, 291 U. S. 502, 54 Sup. Ct. 505; *People* v. *Nebbia*, 262 N. Y. 259, 186 N. E. 694; *United States* v. *Rock Royal*

*Co-operative, Inc.,* 307 U. S. 533, 574, 59 Sup. Ct. 993. He contends, however, that § 801c of the Cumulative Supplement of 1935, as amended by § 493d of the 1937 Supplement, involves such an attempted delegation of the legislative power of the General Assembly to an administrative official as to violate those provisions of the Connecticut Constitution which provide for the division of the powers of the state government into "three distinct departments"—legislative, executive and judicial (Article Second) and which vest the legislative power in the General Assembly (Article Third, Section 1) and, as well, to violate the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States.

The Constitution of this state provides for the separation of the governmental functions into three basic departments, legislative, executive and judicial, and it is inherent in this separation, since the law-making function is vested exclusively in the legislative department, that the Legislature cannot delegate the law-making power to any other department or agency. In the establishment of three distinct departments of government the Constitution, by necessary implication, prescribes those limitations and imposes those duties which are essential to the independence of each and to the performance by each of the powers of which it is made the depositary. *McGovern* v. *Mitchell,* 78 Conn. 536, 547, 63 Atl. 433. Although our Constitution contains no specific limitations, relevant to the present inquiry, upon the exercise of legislative power "the limitations . . . are no less real, and perhaps more effective, than if phrased in specific terms." *State* v. *Conlon,* 65 Conn. 478, 489, 33 Atl. 519. The statement in *Shelton* v. *City of Shelton,* 111 Conn. 433, 437, 150 Atl. 811, that the state may regulate the production, marketing and sale of milk either directly

by its statute or may delegate its regulatory power to an official board or officer or to a municipality, while apt to the issue in that case—the constitutionality of a municipal ordinance—is not to be taken as meaning that it can be delegated to an administrative board or officer without regard to and observance of the recognized essentials of such delegation.

A Legislature, in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law. In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration. *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 426, 55 Sup. Ct. 241, and note, 79 L. Ed. 474 et seq.; *Hampton & Co.* v. *United States,* 276 U. S. 394, 405, 409, 48 Sup. Ct. 348; *Wichita R. R. & Light Co.* v. *Public Utilities Commission,* 260 U. S. 48, 59, 43 Sup. Ct. 52; *Connecticut Co.* v. *Norwalk,* 89 Conn. 528, 531, 94 Atl. 992; 11 Am. Jur. 956. If the Legislature fails to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad, its attempt to delegate is a nullity. *Schechter Poultry Corp.* v. *United States,* 295 U. S. 495, 530, 55 Sup. Ct. 837; *Holgate Bros. Co.* v. *Bashore,* 331 Pa. St. 255, 262, 200 Atl. 672, 117 A. L. R. 639, 644, 645; *Van Winkle* v. *Fred Meyer, Inc.,* 151 Ore. 455, 466, 49 Pac. (2d) 1140; *Jersey Maid Milk*

*Products Co., Inc.* v. *Brock,* 13 Cal. (2d) 620, 642, 91 Pac. (2d) 577, 589.

It appears that in most of the cases involving the validity of milk control acts their constitutionality has been attacked and sustained upon the general structure and scheme of the act as a whole as a permissible delegation of power to an administrative board or officer and the delegation of price-fixing power was not specifically in issue or discussed. However, the principle of necessity of declared policy and prescribed standards was directly involved and a finding of adequacy in these respects was implicit in the upholding of the law including, at least inferentially, the provisions pertaining to price-fixing. The New York statute, Chapter 158, Laws of 1933, which was under consideration in the *Nebbia* case, supra, established a milk control board, prescribed its general powers and duties, and provided (§ 312): (a) "The board shall ascertain by such investigations and proofs as the emergency permits, what prices for milk in the several localities and markets of the state, and under varying conditions, will best protect the milk industry in the state and insure a sufficient quantity of pure and wholesome milk . . . and be most in the public interest. The board shall take into consideration all conditions affecting the milk industry including the amount necessary to yield a reasonable return to the producer and to the milk dealer." (b) After such investigation the board shall by official order fix minimum and maximum wholesale and retail prices to be charged by milk dealers to consumers, by milk dealers to stores for consumption on the premises or for resale to consumers, and by stores to consumers for consumption off the premises where sold. It is declared (c) that the intent of the law is that the benefit of any advance in price granted to dealers shall be passed on to the producer,

and if the board, after due hearing, finds this has not been done, the dealer's license may be revoked, and the dealer may be subjected to the penalties mentioned in the act. The board may (d) after investigation fix the prices to be paid by dealers to producers for the various grades and classes of milk. Several cases in other states concerned statutes which either were practically identical with or modeled closely upon the New York law and followed the *Nebbia* case in upholding them. *Miami Home Milk Producers Asso.* v. *Milk Control Board*, 124 Fla. 797, 169 So. 541; *Rohrer* v. *Milk Control Board*, 322 Pa. St. 257, 186 Atl. 336; *Franklin* v. *State*, 232 Ala. 637, 642, 169 So. 295; *Albert* v. *Milk Control Board*, 210 Ind. 283, 300, 200 N. E. 688.

The Virginia statute, considered and sustained in *Reynolds* v. *Milk Commission*, 163 Va. 957, 965, 179 S. E. 507, provided that the commission after public hearing and investigation may fix minimum and maximum wholesale and retail prices and in determining the reasonableness of prices "shall be guided by the cost of production and distribution, including compliance with all sanitary regulations, . . . operation, processing, storage and delivery charges, the prices of other foods, and the welfare of the general public." See *Highland Farms Dairy, Inc.* v. *Agnew*, 300 U. S. 608, 57 Sup. Ct. 549. The New Jersey statute (Laws of 1933, Chapter 169, amended P. L. 1933, p. 688) sustained in *State Board of Milk Control* v. *Newark Milk Co.*, 118 N. J. Eq. 504, 509, 179 Atl. 116, authorized the milk control board to conduct hearings and fix milk prices "as will best protect the supply . . . and insure a sufficient quantity . . . having special regard to the health and welfare of children and be most in the public interest," enjoining the board, in so doing, to consider "the various grades of milk produced, the

varying percentages of butter fat, plant volume, seasonal production, and other conditions affecting the cost of production, cost of transportation and marketing, and the amount necessary to yield a reasonable return to the producer and to the milk dealer." It was held (p. 523) that under this law the board "merely exercises the administrative function to effectuate the definitely declared legislative policy." The milk control chapter (10) of the California Agricultural Code as amended in 1937, upheld in *Jersey Maid Producers Co., Inc.,* v. *Brock,* 13 Cal. (2d) 620, 91 Pac. (2d) 577, contained (§ 736.1 et seq.) elaborate and detailed provisions for investigation and hearing, specification of factors to be considered in fixing milk prices, and findings in writing. These were specifically and fully considered (p. 652) and it was held that they afforded adequate standards to guide the director in fixing prices.

The New Hampshire Milk Control Act (Laws of 1935, Chapter 21) was held in *Ferretti* v. *Jackson,* 88 N. H. 296, 303, 188 Atl. 474, to grant to the milk control board "such a sweeping and general . . . power that it clearly exceeds constitutional limits." It was said (p. 304): "Short of the implied denial of right to fix maximum as well as minimum prices, the board . . . is as unrestricted in what it may do as is the Legislature. . . . The power of regulation has been assigned to it with no defined standard set for the manner or extent of its exercise." The price fixing provision (§ 9) was that the board, after receiving applications, specified in § 8, from consumers or producers, might hold hearings and investigations, define the market, and "fix just and reasonable minimum wholesale and retail prices. . . ." The price fixing provision in the Wisconsin statute, Chapter 58, Laws of 1935, § 3 subsection 3(b)2, though no more specific

apparently was not attacked or considered in *State ex rel. Finnegan* v. *Lincoln Dairy Co.*, 221 Wis. 1, 265 N. W. 202, the general standards set up by the act being held (p. 15) sufficient to sustain the general delegation of power made to the commission.

The price fixing provision of our act in its original form (Cum. Sup. 1935, § 801c) was no more specific in effect than the similar provision in the New Hampshire act and manifestly much less so than the statutes of other states above mentioned. The addition made by § 494d of the 1937 Supplement, that the administrator shall "take into consideration the type of container used and other cost factors which should influence the determination of such prices" contributed but little toward the definiteness which the rule of delegation requires... The substitution for this section (494d) by § 717e of the 1939 Supplement, which is printed as a footnote,[1] of detailed requirements as to elements to be considered cannot be regarded otherwise than as a recognition of weakness and deficiency in the prior provisions. The purpose of the Chapter (107a) was stated, § 799c, so far as concerned the duties of the administrator to be "promoting, encouraging and fostering co-operation among the producers, among dealers and between producers and dealers and

---

[1] Sec. 717e. MINIMUM PRICES FOR MILK. In establishing minimum prices for milk under the provisions of section 801c, the administrator shall cause said prices to be just and reasonable, and, to accomplish that end, he shall take into consideration and be guided by available information relative to costs of production, hauling, handling, processing, storage, distribution, type of container and other cost factors involved in the production and marketing of milk and milk products, including compliance with all sanitary regulations provided by statute. He shall also consider the balance between the supply of milk and the consumption of the same and the prices for milk in the different areas of the state which will best protect the milk industry in the state and insure an adequate supply of pure, wholesome milk to cover consumptive needs.

by elimination of unfair and demoralizing trade practices." It was not until 1939 that co-operation of consumers with producers and dealers was expressly included by amendment (Supplement, § 710e). Therefore, until then, the fixing of prices to be paid by consumers at wholesale or retail [§ 801c(b)] or to stores (d) was hardly within the scope of the general policy and purpose of the act so far as it was declared.

We feel constrained to hold that there is not afforded by § 801c and the 1937 amendment, or elsewhere in the act, such prescribed standards or principles, courses of procedure, and rules of decision as is requisite to justify the delegation of powers attempted thereby and that the section is invalid as violative of the invoked provisions of the Connecticut Constitution. It is therefore unnecessary to consider whether, as the defendant also claims, there was transgression of the Fourteenth Amendment. We note in passing, however, that in *Miami Home Milk Producers Asso.* v. *Milk Control Board,* supra, attack was made upon the price fixing section (13) of the Florida statute (Laws of 1935, Chap. 17103) as violative of the due process and equal protection clauses of the amendment, but it was held (p. 806) to be valid on the authority of the *Nebbia* case, supra. Section 804c provides that any person aggrieved by any action of the administrator may appeal therefrom to the Superior Court in the manner therein prescribed. It is held in *State Board of Milk Control* v. *Newark Milk Co.,* supra, 523, that such a privilege of judicial review of administrative proceedings satisfies the requirements of the due process clause. See also *State* v. *Kievman,* 116 Conn. 458, 468, 165 Atl. 601.

The defendant also seeks to question the constitutional validity of certain other provisions of the act which, however, are not involved in or relevant to the

present case. It is expressly provided by § 809c that if any provision of this chapter shall be held invalid the judgment shall not invalidate the remainder. However important § 801c may be to the full general effectiveness of the act, it is so definitely separable that its constitutional invalidity does not affect the other provisions which are attacked, and they need not be considered. *State* v. *Kievman,* supra, 462. See also *Highland Farms Dairy, Inc.* v. *Agnew,* supra, 614. Controversy concerning them is to be regarded, as to the present case, as being "abstract and conjectural." Idem, 614.

As our conclusion that the statute, pursuant to which the rule, violation of which is charged, was promulgated and on which it depends, is invalid, also voids the rule and is decisive in favor of the defendant, it is unnecessary to discuss or decide his claim that the evidence was not sufficient to establish his guilt beyond a reasonable doubt, or the several procedural and other subsidiary claims advanced, as to many of which the comment of Judge Prentice in *Foote* v. *Brown,* 81 Conn. 218, 227, 70 Atl. 699, is apropos, "An appellate court ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning."

There is error, the judgment is set aside and the case remanded to the Superior Court with direction to discharge the defendant.

In this opinion the other judges concurred.