RICHARD RAPPORT, BANK COMMISSIONER v.
THE CITY SOCIAL CORPORATION, INC.

SUPERIOR COURT    HARTFORD COUNTY    FILE No. 75884

Memorandum filed August 5, 1946.

*Bernard A. Kosicki,* Assistant Attorney General, for the Plaintiff.

*Shatz and Weinstein,* of Hartford, for the Defendant.

COMLEY, J. The defendant was incorporated. without capitol stock on October 26, 1937. Its articles of association recite that its purposes are "to assist and aid its members socially, educationally and financially in such manner as it can best be done subject to limitations contained in the General Statutes relating to organizations of this character."

Two years after the incorporation of the defendant, the General Assembly enacted chapter 192b of the 1939 Supplement, §§ 1148e—1182e, inclusive, which, for the first time in this state, provided for the establishment and regulation of credit unions. This chapter was substantially amended by §§ 721h—735h of the 1945 Supplement. Section 721h defines a credit union as a "corporation without capital stock, organized under the laws of this state, the principal purpose of which is to accumulate payments on shares from its members and to make loans therefrom to its members for provident or productive purposes." Section 722h provides that "no such corporation shall engage in business in this state as a credit union until it shall have obtained a license from the bank commissioner . . . Each application for such license or renewal thereof shall be in writing and shall contain such information as the commissioner may require." Section 735h provides that no "person, partnership, association or corporation shall receive

payments on shares or make loans therefrom in the manner of a credit union . . . unless licensed by the bank commissioner pursuant to the provisions of § 722h."

The complaint is brought by the plaintiff in his capacity as bank commissioner. It alleges that the defendant "is engaged in business in this state as a Credit Union, the same as defined in the statutes;" and that it has failed to make application for a license as required by § 722h and "has failed to comply with any of the requirements of the law relating to Credit Unions . . . notwithstanding the demands made" by the plaintiff. The plaintiff prays that the defendant "be permanently restrained and enjoined from engaging in business in this state as a Credit Union unless and until the defendant shall have obtained a license from the plaintiff."

The defendant demurs to the complaint upon several grounds, the first being that to require it now to submit to the licensing provisions of § 722h would "impair the obligation of contracts between the State of Connecticut and the defendant corporation under its charter of incorporation which was approved October 26, 1937, a considerable period of time prior to the enactment of § 722h." The second ground of demurrer is that § 722h, if applied to this defendant, would deprive it of its property without due process of law.

At the time the defendant was incorporated, § 3371 of the General Statutes was in effect. This subjects the charter of every corporation in this state to "alteration, amendment and repeal at the pleasure of the general assembly." Under this statute the defendant's charter could be altered in any manner which does not "defeat or substantially impair the object of the grant or rights vested thereunder." *Southington* v. *Southington Water Co.*, 80 Conn. 646, 651. It is obvious that the requirement of a license does not substantially impair the objects of the defendant's charter or any rights which have vested under it. The business of a credit union is one affected with a public interest. The chief activity of a credit union is the lending of money, which is a banking function, and it goes without saying that banking is subject to any form of reasonable governmental regulation, including licensing. See *Treigle* v. *Acme Homestead Assn.*, 297 U. S. 189, 197; *Great Eastern Credit Union* v. *Cooper*, 120 Misc. (N. Y.) 79; *Gilbert* v. *Beacon Hill Credit Union* 287 Mass. 433. It is true

that when the defendant corporation was organized it could lawfully have engaged in the business of a credit union without obtaining a license. That, however, did not prevent the state from subsequently imposing a license upon it in the exercise of the police power. *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365.

In its brief the defendant takes the position that the plaintiff is now trying to make a credit union out of a corporation which is not a credit union. It is true that the defendant's articles of association do not expressly describe it as a credit union. The complaint however alleges that it is doing business as a credit union. The defendant claims that this is not an allegation of fact admitted by its demurrer. It may be true that the allegation is broad and general in its scope. It does not set forth the detailed facts from which one might reach the ultimate conclusion that the defendant is, in fact, acting as a credit union. But those facts are certainly provable under the allegation of the conclusion and, therefore, the demurrer admits it. *Stamford Dock & Realty Corporation* v. *Stamford,* 124 Conn. 341, 345; *Cashman* v. *Meriden Hospital,* 117 Conn. 585, 586.

The third ground of demurrer is that § 722h, in providing that each application for a license "shall contain such information as the commissioner may require," reposes in him the unreasonable power to require any information which he may desire, regardless of its bearing upon the question. The defendant places a strained and unreasonable construction upon the statute. While the statute does not so state, it is necessarily to be implied that the information sought by the commissioner in the applications shall be such as he might reasonably require in order to decide whether a license should issue. Subject to that implied limitation, the scope of the inquiry to be made in the application is an administrative detail properly delegated to the commissioner. *State* v. *Stoddard,* 126 Conn. 623, 628.

The fourth praagraph of the demurrer attacks the power given the commissioner in § 722h to revoke a license "for cause after hearing had thereon" on the ground that it confers "uncontrolled power to revoke licenses without setting up standards under which he is to act in revoking said licenses." That issue cannot be raised in this action under the allegations of the complaint. The complaint in this suit merely alleges in substance

that the defendant is wrongfully carrying on the business of a credit union without having obtained a license or without having even applied for one. A demurrer to these allegations cannot put in issue the validity of that portion of the statute relating to the revocation of licenses. The defendant is, in effect, asking the court to rule that it is not under any duty to ask for and obtain a license because, if it did obtain one, the commissioner might subsequently attempt to revoke it under a statute which it claims is invalid. The defendant is in no position to raise this question under the pleadings.

The same is true of the remaining paragraphs of the demurrer. In them the defendant complains that § 722h is invalid in so far as it confers upon the bank commissioner arbitrary and uncontrolled power to grant or withhold approval of the articles of association of a credit union. This portion of the statute reads as follows: "Seven or more residents of this state may associate to form a credit union by signing and acknowledging before an officer authorized to take acknowledgments of deeds, and by filing with the commissioner, a certificate of articles of association, together with a copy of its proposed by-laws, and, if the commissioner shall be satisfied that the proposed field of operation is favorable to the success of such credit union and that the standing and fitness of the incorporators are such as to give assurance that its affairs will be administered in accordance with the provisions of this chapter, he may approve such articles of association and by-laws and indorse his approval upon such articles of association and file the same with the secretary of the state."

The defendant claims that this constitutes an unlawful delegation of authority to the commissioner in that it provides no primary standards by which his decisions as to the "favorable field of operation" and as to the "standing and fitness of the incorporators" may be tested. *Connecticut Baptist Convention* v. *McCarthy,* 128 Conn. 701; *State* v. *Stoddard,* supra 628.

Whether or not there is any merit to this claim it is not necessary to decide. As pointed out above, this case involves only the question whether this defendant must obtain a license to do business as a credit union. It is not alleged that the defendant has submitted, or has been required to submit, its articles of association and its by-laws to the commissioner for approval. Nor is the plaintiff seeking an injunction on that ground.

In their briefs the parties apparently assume that, in passing upon an application for a license, the commissioner must decide whether the proposed field of operation is "favorable" and whether the incorporators possess the requisite "standing and fitness." I do not so read the statute. Those provisions relate, not to the issuance of a license, but to the issuance of approval of the articles of association and by-laws of a credit union about to be organized. This defendant was incorporated and organized two years before the statute was passed. What the defendant's argument comes down to is that if it does apply for a license it will probably be required to submit its articles of association and by-laws for approval and then the commissioner will be acting under an invalid statute. The defendant cannot raise that question here. If it develops that, upon applying for a license, the commissioner rules against the defendant and bases his ruling upon that portion of the statute, then the defendant may appeal to the Superior Court under the provisions of § 1180e and in that appeal question the validity of the statute.

There may well be some question whether the statute provides any proper "primary standards" for the governance of the commissioner in issuing licenses as distinguished from granting approval to articles of association and by-laws. The statute simply provides that no corporation shall engage in business as a credit union "until it shall have obtained a license from the bank commissioner." No standards whatever are provided, primary or otherwise, to govern the action of the commissioner in issuing or denying a license. Whether or not this is a defect in the statute is not before the court, for no paragraph of the demurrer raises the question.

The defendant does not question the plaintiff's power to bring this action. As bank commissioner he is expressly authorized to apply for injunctive relief only where "any credit union licensed to do business in this state has violated any provision of this chapter." Section 1170e. The defendant is not licensed and, therefore, the plaintiff's power is not derived from this section. Such power, however, may well be implied, for it was the undoubted intent of the legislature to confer upon the commissioner full authority to protect the interests of the state against the unlawful activities of a credit union whether licensed or not. See *Spencer* v. *Consumers Oil Co.* 115 Conn. 554, 558.

The demurrer is overruled.