MEYER SCHWARTZ ET AL. v. JOHN C. KELLEY ET AL.

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 84972

Memorandum filed June 9, 1952.

*Slavitt & Connery,* of South Norwalk, for the Plaintiffs.

*George C. Conway,* Attorney General, and *William L. Beers,* Assistant Attorney General, of Hartford, for the Defendants.

*Joseph K. Sherman,* of Stamford, and *Bailey & Wechsler,* of Hartford, as amicus curiae.

MELLITZ, J.   This is a suit to restrain the defendants who compose the liquor control commission of the state of Connecticut, from enforcing the provisions of §§ 904b-907b of the 1951 Supplement to the General Statutes, enacted as Public Act No. 200 at the 1951 session of the General Assembly.  The plaintiffs are permittees engaged in the retail sale of packaged alcoholic liquors for off-premises consumption under liquor package store permits issued by the liquor control commission.  In general, the act requires, as a prerequisite to the sale of branded or labeled packaged alcoholic liquors by out-of-state shippers, manufacturers or wholesaler permittees that they file a schedule of minimum consumer resale prices with the liquor control commission and that the prices filed shall be uniform throughout the state.   Retail permittees are prohibited, under penalties provided in the act, from selling at less than the scheduled minimum consumer resale price then in effect.

The plaintiffs attack the validity of the act on the ground that the price-fixing power lodged in segments of the liquor industry is an illegal delegation of legislative power, and that it violates the Sherman Anti-Trust Act and the due process and equal protection clauses of the constitution of the state of Connecticut and that of the United States.

The law is designed to regulate and control the distribution and sale of alcoholic liquor. The propriety of legislation to that end, in the exercise of the police power of the state has long been recognized, and is not questioned. Since the twenty-first amendment to the United States constitution, a state may absolutely prohibit the manufacture, transportation, sale or possession of intoxicants. It has a "large discretion as to the means employed to protect its citizens against the evil incident to the liquor traffic . . . . The business being one which admittedly may be dangerous to public health, safety and morals . . . the scope of the legislature's power to regulate it is much broader than in the case of its regulation of an ordinary lawful business essential to the conduct of human affairs." *Francis* v. *Fitzpatrick,* 129 Conn. 619, 622. Having the power to entirely prohibit the business, the legislature may drastically regulate it, if it deems best for society. *State* v. *Zazzaro,* 128 Conn. 160, 166.

With the wisdom of the means to be adopted to deal with the liquor industry the courts have nothing to do, so long as constitutional requirements are met.

"It is not the concern of the courts to pass upon the economic advantages or disadvantages of particular acts of legislation [regulating business]. Such matters are for the legislature to determine. They come within the purview of the state's police power. The only function of the court is to determine whether the object of the legislative enactment is within the power of the legislature, and, if so,

whether the statute bears a reasonable and substantial relation to the object sought to be accomplished and is not arbitrary or discriminatory. If the answer is in the affirmative, the requirement of due process is met . . . . ' "Whether the free operation of the normal laws of competition is a wise and wholesome rule for trade and commerce is an economic question which this court need not consider or determine." *Northern Securities Co.* v. *United States,* 193 U. S. 197, 337-8. And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal.' *Nebbin* v. *New York,* 291 U. S. 502, 537." *Carroll* v. *Schwartz,* 127 Conn. 126, 129.

An act of the legislature is to be held unconstitutional only if there is no reasonable ground upon which it can be sustained. Every presumption and intendment must be made in its favor. *Lyman* v. *Adorno,* 133 Conn. 511, 514. The burden of showing that it does not rest upon any reasonable basis is upon him who asserts illegality and the court "must assume the existence of any state of facts which can reasonably be conceived of as existing at the time of the enactment of the law." *Carroll* v. *Socony-Vacuum Oil Co.,* 136 Conn. 49, 65.

The act here in question appears to be simply an extension to the consumer level of a method of control which has gradually been evolved by the legislature in its efforts to deal with practices in the liquor industry deemed inimical to the public welfare. For example, § 4306 of the General Statutes requires that liquor sold under a brand or trade name shall be registered with and approved by the

liquor control commission; prohibits discrimination in price discounts between permittees; and requires the establishment of and posting of the price of any brand of liquor, the posted price to be controlling for the month following posting, in sales from a manufacturing or wholesale permittee to the retail permittee. Section 4306 evolved into its present form by a series of amendments to the Liquor Control Act passed by the legislature in 1941, 1945 and 1947. Its validity was sustained in *State ex rel. American Distilling Co.* v. *Patterson,* 133 Conn. 345, and it is illuminating, in passing, to recall the circumstances of the case as illustrative of the constant vigil required of the legislature to protect the public interest by appropriate legislation. A manufacturer there sought the aid of the courts to destroy the safeguards of § 4306 and compel the liquor control commission to approve a brand of liquor less than one month old and barely meeting the minimum requirements of federal regulations, which the manufacturer sought to market under a label conspicuously designating the liquor as "Private Stock Whiskey" and as "A superb quality whiskey of excellent character and distinctive flavor."

Price control is a well recognized means of regulating the liquor traffic to correct evils and avoid abuses incident to it. *Gaine* v. *Burnett,* 122 N.J.L. 39; *Reeves* v. *Simons,* 289 Ky. 793; *Gipson* v. *Morley,* 217 Ark. 560.

The legislature has chosen by the act here, to cope with certain aspects of liquor control, through the medium of resale price maintenance at the consumer level. By this means the legislature seeks "to eliminate price wars which unduly stimulate the sale and consumption of alcoholic liquors," this being one of the statements of purpose which accompanied the bill before the legislature in accordance with legislative practice. The plaintiffs say that despite this

stated purpose the fundamental nature of the law is purely that of a price-fixing law which enables out-of-state shippers, manufacturers and wholesalers, as the repositories of absolute and unlimited power to fix prices, to regulate and control the business affairs of all retail package stores throughout the state; that in the area of price regulation, where interstate commerce is affected, the police power of the state must yield to the commerce clause of the United States constitution; and that the law is of the type of compulsory minimum resale price maintenance legislation held to be invalid in *Schwegmann Bros.* v. *Calvert Distillers Corporation,* 341 U. S. 384.

The Miller-Tydings Amendment of the Sherman Anti-Trust Act made vertical agreements prescribing resale prices for trade-marked goods immune from the Sherman Act where such contracts are lawful, as to intrastate transactions in the state of resale. The *Schwegmann* case held that the Miller-Tydings Amendment did not permit the imposition of price-fixing on persons who had not voluntarily entered into a vertical agreement prescribing minimum resale prices. It held, in other words, that compulsory resale price maintenance could not be imposed upon one who did not voluntarily become a party to a vertical agreement sanctioned by the Miller-Tydings Amendment. Here we are not dealing with voluntary contracts or contracts of any kind. The price maintenance requirement here does not flow from any contractual relationship authorized by the legislature pursuant to the exemptions of the Miller-Tydings Amendment, but is a requirement upon all who deal in the sale of liquor, by the direct act of the legislature itself. In *Parker* v. *Brown,* 317 U. S. 341, 350, the United States Supreme Court has held that the Sherman Act itself does not apply to prohibit state action of this kind.

It held (p. 352) that the Sherman Act "must be taken to be a prohibition of individual and not state action." *Parker* v. *Brown* was referred to and cited with approval in the *Schwegmann* case. Nothing in the legislation here sanctions combinations between dealers to fix prices or to enter into horizontal resale price agreements in contravention of the Sherman Act. The evils apprehended by the plaintiffs as the consequence of the legislation will require the further attention of the legislature if and when such consequences become manifest, but until the operation of the law establishes the contrary, the legislature has the right to anticipate that free and open competition between the elements of the liquor industry in whom the power resides under the law to fix resale prices will accomplish the ends sought by the legislature.

The attack on the law as a violation of the commerce clause of the federal constitution finds no support in the decisions of the United States Supreme Court. In a series of cases it has been firmly established that since the twenty-first amendment, the right of a state to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause; nor are state regulations discriminating against imported liquor prohibited by the equal protection clause of the fourteenth amendment. *Indianapolis Brewing Co.* v. *Liquor Control Commission*, 305 U. S. 391; *State Board of Equalization* v. *Young's Market Co.*, 299 U. S. 59; *Mahoney* v. *Joseph Triner Corporation*, 304 U. S. 401. The concurring opinion of Justice Frankfurter *United States* v. *Frankfort Distilleries, Inc.*, 324 U. S. 293, 301, is apt: "If a State for its own sufficient reasons deems it a desirable policy to standardize the price of liquor within its borders either by a direct price-fixing statute or by permissive sanction of such price-fixing in order to discourage the tempta-

tions of cheap liquor due to cutthroat competition, the Twenty-first Amendment gives it that power and the Commerce Clause does not gainsay it."

The plaintiffs contend further that the law is unconstitutional as an invalid delegation of legislative power in that the legislature has committed to units of the liquor industry the power to fix prices without establishing any primary standards as a guide. Cases like *State* v. *Stoddard,* 126 Conn. 623, involving the validity of legislation committing price-fixing power to an administrative body or other group are irrelevant to the consideration of the question here. The law here delegates nothing. To neither the liquor control commission nor anyone else does the legislature delegate the power to classify liquor into types or grades and set minimum prices for each as was done with regard to milk by the milk administrator in the *Stoddard* case. Here the law requires, through a system of price posting, that a given brand of liquor be sold at a uniform price throughout the state. Liquor which is chemically identical may be sold at different prices provided it is sold under different brand names. Competition between brands is in no way affected or controlled by the law, nor is there any sanction for lessening of competition through concerted action or otherwise. There is nothing in the law here "to justify the contention that there is an unlawful delegation of power to private persons to control the disposition of the property of others." *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corporation,* 299 U. S. 183, 194.

Nor does the act violate the equal protection clauses of the state and federal constitutions. It applies equally and uniformly to all manufacturing, wholesale and retail permittees dealing in liquor sold for off-premises consumption. All within the class are treated alike. The classification is a

reasonable one to effectuate the purpose intended. *Francis* v. *Fitzpatrick,* 129 Conn. 619. A law which operates upon all within the class equally will not be open to the charge of being discriminatory. *State* v. *Cullum,* 110 Conn. 291, 294.

As has already been noted, questions of public policy involved in regulations dealing with the price of intoxicating liquors are for the legislature and not within the province of the courts to adjudicate. The legislature is the judge of what is necessary for the public welfare and its judgment will not be disturbed unless palpably in excess of legislative power. The act is not vulnerable in the respects charged by the plaintiffs.

A brief has been filed in behalf of the United States by counsel of the Hartford district of the office of price stabilization, as amicus curiae, urging that the enforcement of the Act be restrained on the ground that any conflict between ceiling prices promulgated under the authority of O. P. S. regulations and minimum consumer resale prices which may be posted under the act must be resolved in favor of the authority of the office of price stabilization. The plaintiffs have made no claim that there is such a conflict and there is, therefore, no occasion to consider whether such a conflict does exist.

Judgment may enter for the defendants to recover costs.