THE CALVE BROTHERS COMPANY *v.* CITY OF NORWALK

BALDWIN, O'SULLIVAN, WYNNE, DALY and COMLEY, Js.

Argued June 13—decided July 17, 1956

*John Keogh, Jr.,* with whom, on the brief, were *Walton Clark, Jr.,* and *John J. Relihan,* for the appellant (plaintiff).

*C. Driscoll Grimes,* with whom were *Harry E. Peden, Jr.,* and, on the brief, *John J. Sullivan,* for the appellee (defendant).

BALDWIN, J. The plaintiff brought this action for an injunction to restrain the enforcement of an ordinance of the city of Norwalk regulating the removal of soil for sale or for use except on the premises and providing penalties for its violation, and for a declaratory judgment that the ordinance is not constitutionally valid. The court held the ordinance valid, sustained the action of the council of the city taken pursuant to it and refused to issue an injunction. The plaintiff has appealed.

The plaintiff has assigned errors in the finding. Our concept of the case renders of no avail any of the corrections in the finding suggested by the plaintiff, for reasons which will appear in the discussion of the claims made with respect to the validity of the ordinance and the action of the common council.

A summary of the facts is as follows: The plaintiff owns a tract of land, approximately 9.9 acres in extent, on the south side of Fillow Street and the west side of Five Mile River, in Norwalk. The land consists of an open field more or less level and high along its westerly boundary but with a gradual slope toward a north and south center line, where it drops off steeply to another substantially level area which

borders the river and is approximately 100 feet in width. On November 2, 1954, when the proceedings which culminated in this action began, the land was located in an AA residential zone under the zoning regulations of Norwalk. The general neighborhood is a well-established residential area. There is a public school about a mile and a half distant. A new grammar school is located half a mile south and an eighth of a mile west of the plaintiff's property. Fillow Street is used by a number of school busses and by many passenger and commercial vehicles. The only access to the plaintiff's land would be from Fillow Street just below the top of a rise in that highway and near a curve.

On June 18, 1952, the common council of Norwalk enacted an ordinance entitled "An Ordinance to Regulate the Removal of Soil for Sale or for Use Other Than on the Premises and Providing Penalties for the Violation Thereof." The pertinent portions of this ordinance appear in the footnote.[1] On Novem-

---

[1] "Whereas, the Common Council of the City of Norwalk finds and determines that the unregulated and uncontrolled relocation, filling, excavation and removal of soil on a large scale has resulted in conditions detrimental to the public safety, health and general welfare, by interfering with surface water drainage, creating nuisances, creating dangerous open pits attractive to children, depleting natural resources, creating stagnant water pools dangerous to health and lowering the value of property generally, Therefore be it Ordained by the Common Council of the City of Norwalk as follows:

"Section 1. No person shall excavate or otherwise remove soil for sale or for use other than on the premises from which the soil shall be taken, except in connection with the construction or alteration of a building on such premises, and excavation or grading incidental thereto, without first having procured permission therefor from the Common Council.

"Section 2. The Common Council shall not consider any application for the removal of soil from the premises for sale or otherwise unless and until the owner of the premises shall first file with the City Clerk an application requesting such permission together with a map of the premises showing the contour lines and proposed contour

ber 2, 1954, pursuant to §§ 1, 2 and 3 of the ordinance, the plaintiff filed an application for permission to

grade resulting from such intended removal of soil in relation to the topography of the premises, and the said proposed contour lines and proposed grades shall be subject to the inspection and approval of the Common Council. No such permission for soil removal shall be issued until such map has been filed, and until the proposed contour lines and grades have been approved by the Common Council.

"Section 3. Upon written request for a hearing made by the applicant to the Council, an opportunity to be heard shall be granted within thirty (30) days thereafter and the Council, in considering and reviewing the application and in arriving at its decision, shall be guided and take into consideration the public health, safety and general welfare and particular consideration shall be given to the following factors: (a) Soil erosion by water and wind. (b) Drainage. (c) Soil fertility. (d) Lateral support slopes and grades of abutting streets and lands. (e) Land values and uses. (f) Such other factors as may bear upon or relate to the coordinate, adjusted and harmonious physical development of the City of Norwalk.

"If, after examining the application and the map provided for in Section 2 of this Ordinance, and after the hearing in the event a hearing is requested by the applicant, the Council shall be of the opinion that the proposed soil removal will not create conditions inimical to the public health, welfare and safety, and will not result in the creation of any sharp declivities, pits or depressions, soil erosion or fertility problems, depressed land values, nor create any drainage, sewerage problems or other conditions of danger, permission to remove the soil shall be granted.

"Section 4. If permission to remove the soil shall be granted, the owner or person in charge shall so conduct the operations that there shall be no sharp declivities, pits or depressions, and in such a manner that the area shall be properly leveled off, cleared of debris, and graded to conform with the contour lines and grade as approved by the Council.

"Section 5. The owner of the premises or the person in charge of the removal of soil, when permission has been duly granted, shall not take away the top layer of arable soil for a depth of six inches, but such top layer of arable soil to a depth of six inches shall be set aside for retention on the premises, and shall be re-spread over the premises when the rest of the soil has been removed, pursuant to levels and contour lines approved by the Council.

"Section 6. Before any permit or permission for soil removal shall be granted or issued, the owner or applicant shall file with the Council a bond, in form, and with surety acceptable to the Council in such amount as in the opinion of the Council shall be sufficient

excavate and remove gravel from its land. The application was accompanied by a map showing a proposed subdivision of the land which complied with the Norwalk regulations for subdivisions, and also by further surveys and maps showing the existing contour of the land, the proposed contour after the removal of 80,000 to 90,000 yards of gravel, and the profiles of the grades of the streets in the proposed subdivision. The application was referred to the director of planning, which was the customary course. The director had been in the employ of the city for six years and had previously considered similar matters. As a result of his recommendations, the plaintiff filed a new set of plans which called, among other things, for the removal of 45,000 to 60,000 yards of gravel. These plans showed excavations on 4 of the 9.9 acres. After the completion of the proposed excavation, the contour of the land would be changed so that a slope which does not now exist would extend downhill from Fillow Street. The plaintiff proposed to cover this slope with six inches of topsoil which could, unless it was properly seeded, wash off and leave an unsightly condition.

The plaintiff is a general contractor and intends to use the gravel for sale to those with whom it has construction contracts. The removal of the gravel would require the use of power shovels, bulldozers

to insure the faithful performance of the work to be undertaken pursuant to the permission granted by the Council pursuant to the provisions of this Ordinance.

"Section 7. No excavation shall be made and no soil shall be removed under the provisions of this Ordinance, unless a permit therefor shall have been first obtained as provided herein, and no excavation shall be made and no soil shall be removed except in conformity with the provisions of this Ordinance.

"Section 8. [Penalties for Violations.]

"Section 9. All Ordinances or parts of Ordinances inconsistent with this Ordinance are hereby repealed."

and trucks. The operation could be completed, if necessary, in one year. The director of planning made recommendations for certain restrictions to be contained in any permit which might be issued to the plaintiff. The plaintiff's application and revised plans were referred to the soil removal committee of the council, which held a public hearing on March 2, 1955. The committee recommended that the plaintiff's application be denied. In considering the application, it took into account the amount of gravel to be removed, which an officer of the plaintiff stated would be 60,000 yards, the safety factors involved in the use of Fillow Street by trucks, the land contours, the safety of children, the noise and dust of the operation, drainage, the character of the neighborhood and the depreciation of the value of neighboring properties, as they all might affect the public health and welfare. On March 22, 1955, the mayor and common council held a public hearing. On that occasion there was evidence to support the following: The plaintiff's premises are located in a residential area; the granting of the permit would reduce land values there; the operation would produce health and safety hazards; the use of trucks and bulldozers in removing the gravel would create noise and dust; a definite traffic hazard would be created; the children in the neighborhood and passing the premises would be subjected to traffic and other hazards; there would be drainage problems; and the land after the operations were completed would slope too steeply to hold the topsoil even if it was replaced. The plaintiff was represented at both hearings. The entire membership of the council visited the location. The council voted unanimously, one of its fourteen members being absent, to deny the plaintiff's application.

The plaintiff's first claim is that the ordinance as the council has applied it to the facts of this case is an unreasonable exercise of the police power because the plaintiff is prevented from taking earth products from its land although it is willing to submit to any reasonable regulations if it is allowed to proceed; because the ordinance contains no standards of guidance to temper an uncontrolled exercise of power by the council; and because the action of the council is discriminatory and based upon no reasonable classification for the granting or refusal of a permit. The plaintiff also claims that if the ordinance is valid, the action of the council in denying the application is nevertheless arbitrary, unreasonable and in abuse of its discretion.

It is unquestionably true that any regulation, under the police power, for the use of property must have a reasonable relation to the public health, safety and welfare and must operate in a manner which is not arbitrary, destructive or confiscatory. *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 671, 103 A.2d 535; *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 529, 107 A.2d 403; *Gionfriddo* v. *Windsor,* 137 Conn. 701, 704, 81 A.2d 266. We examine the ordinance to decide whether, in its purpose and operation generally, it satisfies the rule. The common council in adopting the ordinance included in a preamble a finding of facts that "the unregulated and uncontrolled relocation, filling, excavation and removal of soil on a large scale has resulted in conditions detrimental to the public safety, health and general welfare, by interfering with surface water drainage, creating nuisances, creating dangerous open pits attractive to children, depleting natural

resources, creating stagnant water pools dangerous to health and lowering the value of property generally." The plaintiff has not challenged this finding, there is nothing in the record to overturn it, and the court must accept it as it stands. *Franklin Furniture Co.* v. *Bridgeport,* 142 Conn. 510, 514, 115 A.2d 435; *Gionfriddo* v. *Windsor,* supra. Legislation designed to prevent what this ordinance purports to avoid has been sustained in the courts of Massachusetts, New York and New Jersey. *Burlington* v. *Dunn,* 318 Mass. 216, 221, 61 N.E.2d 243, cert. denied, 326 U.S. 739, 66 S. Ct. 51, 90 L. Ed. 441; *Fred* v. *Mayor & Council,* 10 N.J. 515, 524, 92 A.2d 473; *Lizza & Sons, Inc.* v. *Hempstead,* 69 N.Y.S.2d 296, 299, aff'd, 272 App. Div. 921, 71 N.Y.S.2d 14.

The plaintiff argues, however, that the ordinance as applied to the plaintiff's situation is not regulatory but prohibitory. The fact that the end result was the denial of the application under the circumstances of this case does not make the ordinance invalid as prohibitory. This is true even if the plaintiff, as it claimed, was willing to submit to any reasonable regulation which the council might impose. In zoning matters, for example, the police power can be exercised, under proper circumstances, to deny the use of land for a particular purpose. There is no logical distinction between a denial of use under zoning ordinances, which are admittedly regulatory in their nature, and a denial of use under the ordinance at bar. *Abramson* v. *Zoning Board of Appeals,* 143 Conn. 211, 213, 120 A.2d 827; *Seekonk* v. *John J. McHale & Sons, Inc.,* 325 Mass. 271, 274, 90 N.E.2d 325; *Billerica* v. *Quinn,* 320 Mass. 687, 690, 71 N.E.2d 235. The members of the council viewed the location and heard the recommendation of the council committee, the witnesses at a public hearing, and

the suggestions of the director of planning. They may well have concluded that the circumstances were such that no feasible program for carrying out the plaintiff's purposes could be devised consistent with the standards set up in the ordinance for preserving the public health, safety and welfare. The court found, for example, that even if the recommendations of the director of planning were followed, the traffic and other safety factors involved in using Fillow Street would not be overcome, or the nuisances and depressed land values eliminated. Then too, the terms of the ordinance are clearly regulatory in their nature, and, in the absence of convincing facts to the contrary, courts must accept an expression of legislative intent as having been made in good faith. *Lyman* v. *Adorno,* 133 Conn. 511, 518, 52 A.2d 702.

The plaintiff claims that the ordinance leaves the decision upon the application to the "unrestrained arbitrament" of the council. In short, it argues that the ordinance furnishes no guide to the administrative action of the body charged with its operation. *Connecticut Baptist Convention* v. *McCarthy,* 128 Conn. 701, 704, 25 A.2d 656; *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586. The complete answer to this claim is found in § 3 of the ordinance, which catalogues in detail the factors which the council shall consider as affecting the public health, safety and welfare in passing upon any application made under the ordinance. They furnish ample standards of guidance. *State* v. *Vachon,* 140 Conn. 478, 485, 101 A.2d 509; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 670, 103 A.2d 535; *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 148, 104 A.2d 365. The plaintiff's further claim that the ordinance is discriminatory and therefore unconstitutional is not valid. The ordinance affects alike every landowner

within the territorial limits of the city, and its application under the standards provided in it is always subject to the test whether it has been unreasonably, arbitrarily or illegally enforced. This must depend, as in this case, upon the peculiar circumstances involved, which is true of the enforcement of every police regulation. *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 529, 107 A.2d 403. We conclude that the ordinance is a proper exercise of the police power and that it is constitutionally valid.

We consider now the plaintiff's claim that, assuming the ordinance to be valid, the council acted arbitrarily, unreasonably and in abuse of its discretion. It is unnecessary to review in detail the facts found by the court which could have furnished the basis for the council's decision. Briefly stated, the proposed operation would have changed the topography of a substantial area of land and would have created hazards, at least while it was being carried on, dangerous to children, both on the land itself and on a heavily traveled adjoining highway. It involved drainage problems of a substantial nature, and while the plaintiff claims that the true state of the drainage features is not accurately represented in the finding, the members of the council saw the area and could fairly judge the possible result of the changes contemplated by the plaintiff. The operation would involve the use of heavy equipment, with resultant noise and dust which might well constitute a nuisance in a neighborhood of homes. There can be little doubt that a substantial depreciation of property values in the area would result. We cannot say that the court, in reviewing the decision of the council, erred in the conclusion which it reached on this feature of the case.

Some considerable portions of the briefs of both

parties were devoted to questions raised by the application of the Norwalk zoning regulations. The trial court, however, found that the council reached its conclusion irrespective of the zoning regulations. Counsel have agreed that these regulations are not involved, and therefore the questions are not considered.

There is no error.

In this opinion the other judges concurred.