STATE OF CONNECTICUT *v.* GORDON L. WHITE
(12749)

PETERS, C. J., HEALEY, SANTANIELLO, DUPONT and HADDEN, Js.

Argued February 3—decision released July 14, 1987

*Michael J. Whelton,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom were *James G. Clark,* assistant state's attorney, *David Shepack* and *Christopher Morano,* deputy assistant state's attorneys, and, on the brief, *John M. Bailey,* state's attorney, and *Thomas Hrusa* and *Mitchell Goldklang,* legal interns, for the appellee (state).

SANTANIELLO, J. The defendant, Gordon L. White, was charged in a substitute information with three counts of criminally negligent homicide in violation of General Statutes §§ 53a-58 and 53a-3 (14), and with three counts of failing to provide a smoke detector in violation of Connecticut state fire safety code §§ 11-1.8.1 and 11-3.3.3.1, and General Statutes §§ 29-292 and 29-295. After a jury trial, the defendant was found guilty on all six counts and was sentenced to a total effective term of one year, execution suspended, with three years probation and fined $4500.

On appeal, the defendant raises six claims of error, which can be fairly summarized as follows: (1) that the state fire safety code and statutes charging him with failing to provide smoke detectors are unconstitutionally vague; (2) that the state fire safety code provisions exceed the scope of authority conferred by the code's enabling statute; and (3) that the failure to install smoke detectors cannot provide a sufficient basis for a conviction of criminally negligent homicide. We find error.

The jury could reasonably have found the following facts: The defendant owned a three family residential building located at 1387 Corbin Avenue in New Britain. On December 25, 1982, at approximately 5:30 a.m., Edward Ross, an occupant of the first floor apartment, awoke to find smoke filtering into his apartment. After waking up his wife, their child, and his brother-in-law, and escorting them outside, Ross summoned the New Britain fire department. The fire department arrived at the scene almost immediately and began battling a fire which had broken out on the second floor. Several firefighters entered the second floor apartment, which was full of smoke, and discovered the bodies of Maryann Jones and her two young children, Lindsay and Brandy, the occupants of that apartment, lying dead on the floor. The medical examiner concluded that all three had died from asphyxia caused by smoke inhalation.

It was estimated that the fire, apparently caused by an electrical overload from a wall outlet into which a quartz heater had been plugged, began smoldering at approximately 2:30 a.m., but did not break out in the apartment until about 5:30 a.m. As a result of the slow burning nature of the fire, the apartment was covered with soot and was filled with thick smoke. There were no smoke detectors in the building.

At trial, the state introduced evidence regarding how a smoke detector works, the cost of a smoke detector, how it is installed, and its effectiveness. Additionally, testimony was introduced that had smoke detectors been installed in the defendant's building, the occupants would have been alerted to the fire in sufficient time to enable them to escape.

Evidence was also introduced that the defendant owned another multifamily apartment building located in East Hartford. In May, 1982, the defendant received notice from the East Hartford fire marshal informing him that he was required to furnish smoke detectors in his East Hartford building. The defendant installed smoke detectors in the East Hartford building, but he did not install smoke detectors in his New Britain building. Additionally, prior to December, 1982, the defendant undertook renovations on the New Britain property but did not obtain building permits for the work he performed.

At the conclusion of the state's case, the defendant moved for a judgment of acquittal claiming that: (1) the state had failed to prove that the defendant, by not installing smoke detectors, had acted with criminal negligence or had proximately caused the deaths of the victims; and (2) the state had failed to prove that the defendant had violated Connecticut fire safety code §§ 11-1.8.1 and 11-3.3.3.1 and General Statutes §§ 29-292 and 29-295 because the state did not establish that a building permit had been issued on or after October 1, 1976, for the building in question. The defendant also argued that the fire safety code was inconsistent with its enabling statute in contravention of General Statutes § 29-293. The court denied the defendant's motion. Subsequently, after judgment was rendered, the defendant filed a motion in arrest of judgment and a motion for judgment of acquittal, both of which were denied.

## I

Initially, the defendant contends that his convictions for failing to provide smoke detectors must be set aside because the state fire safety code provisions and applicable statutes are unconstitutionally vague, in violation of the fourteenth amendment to the United States Constitution and article first, § 8, of the Connecticut constitution.[1] Specifically, the defendant claims that § 11-1.8.1[2] of the Connecticut state fire safety code fails to provide sufficient notice of the conduct required for providing and installing a smoke detector, and that General Statutes § 29-296[3] allows for arbitrary and discriminatory enforcement of the code by the fire marshal.

[1] The due process requirements of the federal and Connecticut constitutions have a common meaning and thus allow us to treat the questions on appeal as a single issue. *Miller* v. *Heffernan,* 173 Conn. 506, 516, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978).

[2] "[Connecticut State Fire Safety Code (Rev. to 1981)] 11-1.8 Smoke Detection and Warning Equipment.

"11-1.8.1 In each guest room, suite or sleeping area of hotels, motels, lodging or rooming houses, and dormitories, and in each dwelling unit within apartment houses and one- and two-family dwellings, smoke detectors in addition to those required elsewhere in this code shall be provided as follows:

"Each such guest room, suite, sleeping area or dwelling unit shall be provided with a minimum of one approved smoke detector installed in a manner and location approved by the local fire marshal and the responsible building official. When actuated, the detector shall provide an alarm suitable to warn the occupants within the individual guest room, suite, sleeping area, or dwelling unit.

"Smoke detectors required by this section shall provide protection in accordance with NFPA-74/1978, and the documents required therein shall be furnished."

[3] "[General Statutes] Sec. 29-296. (Formerly Sec. 29-44). VARIATIONS OR EXEMPTIONS FROM CODE. The state fire marshal may grant variations or exemptions from, or approve equivalent or alternate compliance with, particular provisions of any regulation issued under the provisions of section 29-292 where strict compliance with such provisions would entail practical difficulty or unnecessary hardship, or is otherwise adjudged unwarranted, provided any such variation or exemption or approved equivalent or alternate compliance shall, in the opinion of the state fire marshal, secure the public safety."

Due process demands that a statute be sufficiently definite and precise to enable a person to know what is permitted and what is prohibited. See, e.g., *State* v. *Bunkley,* 202 Conn. 629, 642, 522 A.2d 795 (1987); *Gunther* v. *Dubno,* 195 Conn. 284, 297, 487 A.2d 1080 (1985); *State* v. *Pickering,* 180 Conn. 54, 59–60, 428 A.2d 322 (1980). " 'That the terms of a penal statute . . . must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. . . .' " *State* v. *Pickering,* supra, 60, quoting *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally* v. *General Construction Co.,* supra; see *State* v. *Cavallo,* 200 Conn. 664, 667, 513 A.2d 646 (1986); *State* v. *Eason,* 192 Conn. 37, 46, 470 A.2d 688 (1984); *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 (1975). Thus, "[l]aws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Also, if arbitrary and discriminatory enforcement is to be prevented, laws must provide adequately delineated standards for those who apply them." *Mitchell* v. *King,* supra, 143; see *Grayned* v. *Rockford,* 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

It is not necessary, however, that a statute list the precise conduct prohibited or required. *State* v. *Eason,* supra, 47. It is recognized that the law may be general in nature; the constitution requires no more than a reasonableness of certainty. Id.; *State* v. *Chetcuti,* 173 Conn. 165, 167, 377 A.2d 263 (1977). " 'The test is

whether the language conveys sufficiently definite warning as to the proscribed [or required] conduct when measured by common understanding and practices.' *Jordan* v. *DeGeorge,* 341 U.S. 223, 231–32, 71 S. Ct. 703, 95 L. Ed. 886 [reh. denied, 341 U.S. 956, 71 S. Ct. 1011, 95 L. Ed. 1377 (1951)]." *State* v. *Chetcuti,* supra, 167–68; see *Rose* v. *Locke,* 423 U.S. 48, 50, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975).

The defendant first claims that the fire safety code is unconstitutionally vague because it is unclear from § 11-1.8.1 whether the smoke detector must be "installed" or "provided." Section 11-1.8.1, which states that "each dwelling unit shall be provided with a minimum of one approved smoke detector installed in a manner and location approved by the local fire marshal and the responsible building official," clearly delineates that the person providing the smoke detector must also install it. Therefore, § 11-1.8.1 is not unconstitutionally vague in this regard.

The defendant also claims that the provision is unconstitutionally vague because it fails to set forth who must provide and install the smoke detector. We find the defendant's contention without merit for several reasons. As we stated in *State* v. *Pickering,* supra, 62–63, "[r]eferences to judicial opinions involving the statute, the common law, legal dictionaries or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." On October 6, 1982, approximately two and one-half months before the fire in this case, *Tucker* v. *Lopez,* 38 Conn. Sup. 67, 68–69, 457 A.2d 666 (1982), was decided, stating that the landlord is required to install smoke detectors pursuant to § 11-1.8.1 of the fire safety code.

Moreover, as we also stated in *State* v. *Pickering,* supra, 57, "the constitutionality of a statutory provision being attacked as void for vagueness is determined

by the statute's applicability to the particular facts at issue." In the present case, the defendant received notice from the East Hartford fire marshal informing him that he was required to install smoke detectors in that building pursuant to the fire safety code. We conclude that, in light of the prior judicial decision and the notice from the East Hartford fire marshal, the defendant had been fairly warned that he had a duty to install smoke detectors in his New Britain building.

The defendant further argues that General Statutes § 29-296 gives the fire marshal unbridled discretion to enforce the fire safety code arbitrarily and discriminatorily because it allows him to grant variances or exemptions from the regulations. The defendant, however, never sought a variance or exemption pursuant to § 29-296. As we have previously stated, the constitutionality of a statute is to be determined by the particular facts at issue. *State* v. *Pickering,* supra; see also *State* v. *Eason,* supra, 46. Because the defendant has not claimed that the fire marshal discriminatorily or arbitrarily enforced the code provisions against him, the defendant cannot be heard to complain that § 29-296 is unconstitutionally vague with respect to his case. Accordingly, we find the defendant's argument that § 11-1.8.1 of the Connecticut state fire safety code and General Statutes § 29-296 are unconstitutionally vague is without merit.

## II

The defendant next complains that the fire safety code regulations exceed the scope of authority conferred by § 29-292,[4] the code's enabling legislation. We agree.

[4] "[General Statutes (Rev. to 1983)] Sec. 29-292. (Formerly Sec. 29-40). FIRE SAFETY CODE. SMOKE DETECTION AND WARNING EQUIPMENT. CERTIFICATE OF OCCUPANCY. REVIEW OF PLANS AND SPECIFICATIONS; FEES. (a) The state fire marshal and the codes and standards committee shall adopt,

It is well established that although the power to make law is vested exclusively in the legislature, the legislature may create a law designed to accomplish a particular purpose and may expressly authorize an administrative agency to "fill up the details" by prescribing rules and regulations for the operation and

promulgate and administer a fire safety code and at any time may amend the same. The regulations in said code shall provide for reasonable safety from fire, smoke and panic therefrom, in all buildings and areas adjacent thereto except in private dwellings occupied by one or two families and upon all premises except those used for manufacturing, and shall include provision for smoke detection and warning equipment in residential buildings designed to be occupied by two or more families for which a building permit is issued on or after October 1, 1976, and in new residential buildings designed to be occupied by one or more families for which a building permit for new occupancy is issued on or after October 1, 1978, to provide Level Four Protection, as defined in the 1974 edition of Number Seventy-four of the National Fire Protection Association. Said regulations shall provide the requirements for markings and literature which shall accompany such equipment sufficient to inform the occupants and owners of such buildings of the purpose, protective limitations and correct installation, operating, testing, maintenance and replacement procedures and servicing instructions for such equipment and shall require that smoke detection and warning equipment which is installed in such residential buildings shall be capable of sensing visible or invisible smoke particles, that the manner and location of installing smoke detectors shall be approved by the local fire marshal or building official, that such installation shall not exceed the standards under which such equipment was tested and approved and that such equipment, when activated, shall provide an alarm suitable to warn the occupants.

"(b) No certificate of occupancy shall be issued for any residential building designed to be occupied by two or more families for which a building permit is issued on or after October 1, 1976, or any new residential building designed to be occupied by one or more families for which a building permit for new occupancy is issued on or after October 1, 1978, unless the local fire marshal or building official has certified that said building is equipped with smoke detection and warning equipment complying with the fire safety code.

"(c) Detailed plans and specifications of structures subject to the state fire safety code may be submitted to the state fire marshal for review and a determination concerning compliance with the state fire safety code. The state fire marshal shall develop a schedule of fees for reviewing such plans and specifications, which schedule shall provide for fees payable to the state treasurer in amounts of not less than ten dollars nor more than one hundred dollars, depending upon the complexity of the review."

enforcement of that law. *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586 (1940); *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 363, 417 A.2d 358 (1979); *Kellems* v. *Brown,* 163 Conn. 478, 498–500, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 114, 273 A.2d 880 (1970); *H. Duys & Co.* v. *Tone,* 125 Conn. 300, 312–13, 5 A.2d 23 (1939). It is necessary, however, that the enabling statute declare legislative policy, establish primary standards or lay down an intelligible principle to which the administrative officer or body must conform. *State* v. *Stoddard,* supra. If the legislature fails to prescribe the limits of the power delegated with reasonable clarity, or the power is too broad, its attempt to delegate is a nullity. Id. While the modern trend of the legislature is liberal in approving delegation under broad regulatory standards so as to facilitate the operational functions of administrative agencies; *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care,* supra, 368; agencies must, nonetheless, act according to the strict statutory authority. *Page* v. *Welfare Commissioner,* 170 Conn. 258, 262, 365 A.2d 1118 (1976); *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 604, 362 A.2d 847 (1975); *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* supra, 116.

To address the defendant's claim that the fire safety code exceeds the authority conferred by its enabling statute, a review of the original act, its relevant amendment and the relevant code provision is necessary. In 1947, the legislature passed Public Acts 1947, No. 419, which provided that "[t]he state fire marshal shall establish a fire safety code and at any time may amend the same. The regulations in said code shall provide for reasonable safety from fire, smoke, and panic there-

from, in all buildings except in private dwellings occupied by one or two families, and upon all premises except those used for manufacturing." General Statutes (1949 Rev.) § 3665. The purpose of the statute was to give the fire marshal the ability to enact reasonable minimum requirements for safety in new and existing buildings. 2 H.R. Proc., 1947 Sess., pp. 324–25.

For almost thirty years, this act remained substantially unchanged.[5] In 1976, however, the legislature passed No. 76-78 of the 1976 Public Acts (Public Act No. 76-78) which amended § 20-40, the predecessor of § 29-292, mandating, in relevant part, that the regulations "shall include provision for smoke detection systems in residential buildings designed to be occupied by two or more families for which a building permit is issued on or after [October 1, 1976]."

The fire safety code, passed pursuant to § 29-292, requires that smoke detectors be installed in "each guest room, suite or sleeping area of hotels, motels, lodging or rooming houses, and dormitories, and in each dwelling unit within apartment houses and one- and two-family dwellings . . . . " Connecticut State Fire Safety Code (1981) § 11-1.8.1.[6]

The defendant contends that the enabling statute, as amended by Public Act No. 76-78, limits the fire marshal's ability to promulgate regulations concerning smoke detectors in buildings designed to be occupied by two or more families to those buildings for which a building permit has been issued on or after October 1,

---

[5] In 1958, General Statutes § 3665 was transferred and set out as § 29-40 and in 1983 the statute was transferred and set out as § 29-292.

[6] On March 10, 1987, the Code for Safety to Life from Fire in Buildings and Structures of the National Fire Protection Association, Inc., Standard 101, 1985 edition, was adopted by reference as the Connecticut fire safety code. See Connecticut State Fire Safety Code § 29-292-1. For the purpose of this appeal, however, the code provisions as they existed at the time relevant to this action govern our disposition of the case.

1976. Because the fire safety code does not require that smoke detectors be installed *only* in those buildings, the defendant argues that the code exceeds its express statutory authority.

There is no question that the legislature, in originally enacting § 29-292, conferred upon the fire marshal broad authority to pass rules and regulations to "provide for reasonable safety from fire, smoke and panic therefrom," and that such a conferral was a valid delegation of authority. See *Len-Lew Realty Co.* v. *Falsey*, 141 Conn. 524, 529–30, 107 A.2d 403 (1954). Had the original statute been in effect during this case, there would be little doubt that the challenged fire safety code regulations would be valid. The legislature, however, amended the enabling statute in 1976. The question thus becomes whether the legislature, in passing Public Act No. 76-78, intended to limit the fire marshal's authority to pass regulations with respect to smoke detectors for residential buildings designed to be occupied by two or more families.

In determining whether the legislature was limiting the authority of the fire marshal to promulgate regulations, we are guided by the well established principles of statutory construction which require us to ascertain and give effect to the apparent intent of the legislature. *State* v. *Dolphin,* 203 Conn. 506, 521, 525 A.2d 509 (1987); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54, 523 A.2d 477 (1987); *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). When the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *State* v. *Dolphin,* supra; *State* v. *Blasko,* supra; *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061,

106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986). If, however, the language is unclear, we must ascertain the intent of the legislature by examining the language of the statute, its legislative history and the purpose the statute is to serve. *State* v. *Dolphin,* supra; *Rhodes* v. *Hartford,* supra; *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985).

An examination of the statute fails to reveal whether the legislature, in enacting Public Act No. 76-78, intended to authorize the fire marshal in promulgating the fire safety code to require smoke detectors *only* in multifamily buildings for which a building permit was issued after October 1, 1976, as the defendant claims, or, as the state argues, intended to set a minimum standard for the installation of smoke detectors and allow the fire marshal to set additional standards regarding smoke detectors.

The state contends that the plain language of the amendment demonstrates that the legislature did not intend to limit the authority of the fire marshal, but rather intended the amendment to direct that "the Code *include* at least that class of buildings." (Emphasis added.) The state argues that the amendment's language that the regulations "shall *include* provision for smoke detection systems" (emphasis added) mandated that the fire marshal *at least include* such a regulation in the code, but did not proscribe him from further regulating in that area. The state claims that the word "include" is a word of enlargement, not one of limitation, and cites to Webster's Third New International Dictionary, which defines "include" as "to place, list or rate as part or component of a whole or larger group, class or aggregate . . . to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate . . . ."

We have recognized in the past, however, that the word "include" may be considered a word of limita-

tion as well as a word of enlargement. *Maciejewski* v. *West Hartford,* 194 Conn. 139, 147, 480 A.2d 519 (1984); *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 150, 285 A.2d 352 (1971). In *Hartford Electric Light Co.* v. *Sullivan,* supra, we recognized that the most likely common use of the term "shall include" is one of limitation. In that case, however, we could not conclude with certainty that it was so employed. Id. Similarly, in the present case we cannot conclude that the word "include" is used as a word of limitation or a word of enlargement.

Because we find the legislative intent unclear from the language of the statute itself, we must turn to other tools of statutory interpretation. Unfortunately the legislative history of Public Act No. 76-78 is of little help. While debate on the amendment indicates that it was enacted to require smoke detectors in all new buildings occupied by two or more families for which a building permit was issued after the enumerated date; 19 S. Proc., Pt. 2, 1976 Sess., pp. 552–53; see also 19 H.R. Proc., Pt. 4, 1976 Sess., pp. 1327–28; it does not indicate whether the legislature intended to preclude the fire marshal from further promulgating regulations for the installation of smoke detectors in other multi-family buildings.

We find it significant, however, that the legislature chose to delineate carefully the types of buildings in which it required the installation of smoke detectors, rather than to mandate generally the installation of smoke detectors and to defer to the fire marshal's authority the promulgation of such regulations.[7] When

---

[7] It is also noteworthy that the legislature chose to amend General Statutes § 29-292 subsequent to 1976, thus further requiring smoke detectors in other types of buildings.

In 1977, the legislature passed Public Acts 1977, No. 77-334, which directed the fire safety code to include a provision requiring smoke detectors in "new residential buildings to be occupied by one or more families

a statute provides that a thing shall be done in a certain way, it carries with it an implied prohibition against doing that thing a different way. *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957); *New Haven* v. *Whitney,* 36 Conn. 373, 375 (1870); see *State* v. *Kish,* 186 Conn. 757, 765, 443 A.2d 1274 (1982). "An enumeration of powers in a statute is uniformly held to forbid things not enumerated. *State ex rel. Morris* v. *Buckeley,* 61 Conn. 287, 367, 23 A. 186 [1892]." *State ex rel. Barlow* v. *Kaminsky,* supra. Had the General Assembly intended that the fire marshal be allowed to promulgate more comprehensive regulations, it could easily have broadened the requirements for smoke detector regulations. Instead it specifically set forth that smoke detectors were required in buildings for which building permits were issued on or after October 1, 1976.

Moreover, we agree with the defendant that, because § 29-292 is penal in nature, the statute and the code provision should be construed strictly and we should resolve any ambiguity in the defendant's favor.[8] See *State* v. *McGann,* 199 Conn. 163, 177, 506 A.2d 109

for which a building permit for new occupancy is issued on or after [October 1, 1978]." And, in 1985, the legislature further mandated that the code include a provision for smoke detection equipment capable of operation using alternating current and batteries in "new residential buildings designed to be occupied by one or more families for which a building permit for new occupancy is issued after October 1, 1985." Public Acts 1985, No. 85-321, § 1.

[8] We recognize that General Statutes § 29-292 et seq. are regulatory statutes which impose criminal liability, and as such the rule of strict construction must be balanced against the competing interest of effectuating the public policy of remedial statutes. *Rhodes* v. *Hartford,* 201 Conn. 89, 95, 513 A.2d 124 (1986). *Rhodes,* however, is distinguishable from the instant case in several respects. First, the legislative intent was more clearly ascertainable from the legislative history and purpose of the statute in question in *Rhodes.* Second, the plaintiff in *Rhodes* did not personally "run the risk of immediate criminal exposure," as does the defendant in this case. Therefore, under the circumstances of this case, we conclude that any ambiguity must be resolved in the defendant's favor.

(1986); *State* v. *Rawls,* 198 Conn. 111, 122, 502 A.2d
375 (1985). The fact that this statute has a penal com-
ponent cannot be seriously doubted, as demonstrated
by the defendant's conviction. See General Statutes
§ 29-295.[9] Thus, because the legislative intent behind
Public Act No. 76-78 is not entirely clear, we construe
§ 29-292 to limit the fire marshal's authority in pass-
ing regulations with regard to the installation of smoke
detectors. Section 29-292, as amended by Public Act
No. 76-78, directed that the code provide regulations
for smoke detectors in buildings designed for two or
more families for which a building permit has been
issued on or after October 1, 1976. To the extent that
fire safety code § 11-1.8.1 regulates beyond that legis-
lative mandate, it exceeds the scope of its statutory
authority. See General Statutes § 29-293.[10] The defend-
ant cannot be convicted of violating § 11-1.8.1 unless
it is shown that a building permit had been issued for
his building on or after the enumerated date. At trial
no such evidence was introduced. Accordingly, the
defendant's convictions for such violations must be set
aside.

---

[9] "[General Statutes] Sec. 29-295. (Formerly Sec. 29-43). PENALTY FOR
VIOLATION OF CODE. Any person who violates any provision of the fire safety
code shall be fined not less than two hundred nor more than one thousand
dollars or imprisoned not more than six months or both."

[10] "[General Statutes (Rev. to 1983)] Sec. 29-293. (Formerly Sec. 29-41).
CODE TO SPECIFY MINIMUM REQUIREMENTS. ESTABLISHMENT OF FIRE
ZONES. Said code shall specify reasonable minimum requirements for fire
safety in new and existing buildings and facilities, and may, to ensure the
reasonable safety of persons occupying or using any premises, open to the
public, require the establishment of a fire zone for the orderly access to
said premises of fire and other emergency equipment. Regulations may be
in accordance with the size, type of construction and nature of use or occu-
pancy of such buildings or facilities. No regulation made in accordance with
sections 29-292 to 29-294, inclusive, shall be inconsistent with the provi-
sions of the statutes nor impair the rights of municipalities to make orders
with respect to buildings as provided in section 29-283, so far as such orders
specify requirements consistent with the regulations issued under the
authority of sections 29-292 to 29-294, inclusive."

## III

The defendant also claims that his failure to install smoke detectors could not, as a matter of law, form the basis for his conviction of criminally negligent homicide in violation of General Statutes §§ 53a-58[11] and 53a-3 (14),[12] because he had no duty to install the smoke detectors.

To be guilty of criminally negligent homicide, a person must cause the death of another while failing to perceive a substantial and unjustifiable risk that the death will occur. General Statutes §§ 53a-58, 53a-3 (14). The risk of death must be of such a nature and degree that disregarding it would constitute a gross deviation from the standard of conduct that a reasonable person would observe in the situation. General Statutes § 53a-3 (14). Accordingly, it is incumbent upon the state to establish that: (1) the defendant had a duty or an obligation under the law to conform to a certain standard of conduct; (2) the defendant grossly deviated from the standard of conduct; and (3) the deviation proximately caused the death of another. See generally W. LaFave & A. Scott, Criminal Law (1972) §§ 26, 30, 35; cf. W. Prosser & W. Keeton, Torts (5th Ed. 1984) §§ 30, 34; 2 Restatement (Second), Torts § 501.

[11] "[General Statutes] Sec. 53a-58. CRIMINALLY NEGLIGENT HOMICIDE: CLASS A MISDEMEANOR. (a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle.

"(b) Criminally negligent homicide is a class A misdemeanor."

[12] "[General Statutes] Sec. 53a-3. DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . .

"(14) A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

To sustain a conviction for criminally negligent homicide, the court must first determine whether the defendant owed a duty or obligation to conform to a certain standard of conduct. Cf. *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982); *Behlman* v. *Universal Travel Agency, Inc.*, 4 Conn. App. 688, 691, 496 A.2d 962 (1985). The existence of such a duty is a question of law. *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982). The duty may arise from a contract, a statute, or circumstances under which a reasonable person, knowing what the defendant knew or should have known, would anticipate that harm of the general nature as that suffered was likely to result from his act or failure to act. *Coburn* v. *Lenox Homes, Inc.*, supra; *Neal* v. *Shiels, Inc.*, 166 Conn. 3, 12–13, 347 A.2d 102 (1974).

The state first contends that the Connecticut state fire safety code established the defendant's duty to install smoke detectors in his building. As we have seen in part II of this decision, the defendant had no statutory duty to install smoke detectors because no building permit had been issued for his building on or after October 1, 1976. The state further contends that the defendant had a common law duty to provide smoke detectors in his building. While a landlord has a duty to use reasonable care to keep those parts of his building under his control in a reasonably safe condition; *Cruz* v. *Drezek*, 175 Conn. 230, 234–35, 397 A.2d 1335 (1978); *Douglass* v. *95 Pearl Street Corporation*, 157 Conn. 73, 82, 245 A.2d 129 (1968); *Noebel* v. *Housing Authority*, 146 Conn. 197, 200–201, 148 A.2d 766 (1959); we find no duty imposed at common law requiring the landlord or owner of a building to install smoke detectors. "At common law an owner has in general *no* duty to provide his building with any sort of firefighting equipment or warning system and so cannot be held liable for failing to do so." (Emphasis in original.) *Fireman's Fund*

*American Ins. Co.* v. *Almacenes Miramar, Inc.,* 649 F.2d 21, 25 (1st Cir. 1981); see *Webster* v. *Heim,* 80 Ill. App. 3d 315, 317, 399 N.E.2d 690 (1980) (failure to provide fire exits, smoke detection devices and fire doors was not negligence at common law); cf. *Dundas* v. *Lincoln County,* 48 Or. App. 1025, 618 P.2d 978, 984 (1980) (in absence of provision in lease imposing such an obligation, landlord under no duty to supply fire-fighting equipment for leased premises); *Geer Co.* v. *Hall County Airport Authority,* 193 Neb. 17, 23–24, 225 N.W.2d 32 (1975) (landlord has no duty at common law to equip and maintain leased premises with fire equipment apparatus); 49 Am. Jur. 2d 868, Landlord and Tenant § 891 (landlord under no duty at common law to equip or maintain building with fire apparatus and not liable for damage or injury resulting from failure to do so); but see *Northern Lights Motel, Inc.* v. *Sweaney,* 561 P.2d 1176, 1191–92 (Alaska 1976) (lack of smoke detectors in motel is relevant under ordinary negligence standard).

Liability based on criminal negligence presupposes a duty to act or to refrain from acting. If there is no duty, there can be no liability predicated upon that failure to act. Cf. *Frankovitch* v. *Burton,* 185 Conn. 14, 20, 440 A.2d 254 (1981); *Behlman* v. *Universal Travel Agency, Inc.,* supra. Accordingly, because the defendant had no duty to install smoke detectors in his building, he cannot be convicted of criminally negligent homicide for having failed to do so.

There is error, the judgment is set aside and the case is remanded to the trial court with the order to grant the defendant's motion for acquittal on all counts.

In this opinion the other justices concurred.