[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner was arrested and charged with murder on June 16, 1978. He was tried before a jury and convicted. He was sentenced to a term of twenty-five (25) years to life. He appealed. His conviction was reversed. State v. Falby,187 Conn. 6 (1982). He was in the process of being retried when, after the State rested, he pleaded guilty under Alford[1] to murder with an agreed recommendation of a sentence of fifteen (15) years to life. When his retrial commenced in 1983, Falby had been incarcerated five (5) years. The evidence is unequivocal that the issue of eligibility for parole was among the critical factors which the petitioner considered prior to pleading guilty.
Falby and his trial attorney, Raymond Ganim, testified that they discussed the probability that Falby would be eligible for a parole hearing within two (2) to three (3) years after his plea. They both testified that they discussed petitioner's chances for making parole and that Ganim advised Falby that based upon his experience and knowledge of other similar cases that Falby's chances for making parole at the first hearing were good.
The area of disagreement in the testimony concerns the advice, if any, that Ganim gave Falby with respect to a statute which took effect less than two weeks prior to Falby's plea. That statute, 54-126a, allows the victim of a crime and/or the victim's family to testify before the parole board. Falby claims he was very concerned about the impact of the statute on his chances for parole because the victim's family[2] was very visible and actively sought severe punishment of the petitioner during the pendency of the trials. Falby claims he specifically asked Ganim if the victim's family would be allowed to appear before the parole board and that Ganim told him that the new statute would not apply retroactively. During the habeas trial CT Page 5304 Ganim testified that he had no recollection of discussing the particular law with Falby.
At his parole hearing in 1986, the victim's family did testify. Not only was the petitioner denied parole, but also he was denied another hearing until 1993.[3]
The petitioner claims that because Ganim misadvised him about the effect of 54-126a his plea was not intelligently and voluntarily made. He also claims that trial counsel rendered ineffective assistance when he advised Falby that the law allowing the victim's family to address the parole board would not affect him.
The Court concludes that the petitioner and his lawyer discussed the applicability and effect of the statute.[4]
Falby's testimony about that discussion was not challenged by the testimony of Ganim. Ganim could only state that he had no specific recollection of discussing it. Having found that the new law was a concern and was discussed, was Ganim's advice to the petitioner that the law would not affect Falby's parole hearing of such significance that it rendered trial counsel's services ineffective?
The petitioner relies upon Hill v. Lockhart, 877 F.2d 698
(8th Cir. 1989). In that matter the trial attorney failed to apprise himself of the fact that because his client had a prior felony record, by statute he would have to serve a longer in-prison sentence than otherwise to be eligible for parole. The length of the actual incarceration of the client was a known quantity delineated by the state law.
In the case at bar, it cannot be determined with any certitude the effect of the victim's family's appearance before the parole board. To prevail on a claim of ineffective assistance, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 694. This burden of proof was not met.
Falby's other claim that his plea was not intelligently and voluntarily made because he was misinformed about the ability of the victim's family to testify likewise fails. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice `was within the range of competence demanded of attorneys in criminal cases."' Hill v. Lockhart, 474 U.S. 52, 56,106 S. CT. 366, 88 L.Ed.2d 203 (1985); McMann v. Richardson, 397 U.S. 759,771, 25 L.Ed. 763, 90 S.Ct. 1441 (1970). CT Page 5305
It is incumbent upon the petitioner to show prejudice. "This additional `prejudice' requirement was based on our conclusion that `[a]n error by counsel, even if professionally unreasonable does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."' Hill v. Lockhart at 57 citing Strickland at 691. The petitioner is unable to prove that but for the claimed ineffective assistance of his trial attorney, the result probably would have been different.[5]
In assessing the validity of the petitioner's guilty plea the court must consider whether or not the issue of making parole is a collateral or a direct consequence of the plea.
 Before he can make a valid guilty plea, a defendant must be fully aware of the direct consequences of his plea. Brady v. United states, supra, 748. To ensure compliance with this constitutional mandate, Practice Book Section 711 requires the trial court to advise the defendant of (1) the mandatory minimum and maximum possible sentences, (2) the maximum possible consecutive sentence, (3) the possibility of additional punishment imposed because of previous convictions, and (4) the fact that the particular offense does not permit a sentence to be suspended.
 In Connecticut, as elsewhere, "the scope of `direct consequences' is very narrow; J. Bond, Plea Bargaining and the Guilty Plea (2d Ed.) Section 3.38"; State v. Gilnite, 202 Conn. 369, 383 n. 17, 521 A.2d 547 (1987); and is limited to those consequences enumerated in Practice Book Section 711. State v. Gilnite, supra. Except for those inquiries mandated by the constitution and court rule, the court is not obliged to assume the role of the defendant's counselor; id., citing State v. Eason, 192 Conn. 37, 45, 470 A.2d 688 (1984); or to advise the defendant of every possible consequence of his guilty plea. State v. Gilnite, supra; see also, State v. Rish, 17 Conn. App. 447, 456, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137
cert. denied U.S. 110 S.Ct. 72, 107 L.Ed.2d 38 (1989). In light of these considerations, the possibility that the petitioner would be committed to Whiting unmistakably appears to be a collateral consequence of his pleas. The petitioner was not entitled, therefore, to be advised by the trial court as to the existence of, or the possible result of, this procedure.
Sherbo v. Manson, 21 Conn. App. 172, 181-182 (1990). Sherbo dictates the conclusion that one's chances for making parole is a collateral consequence and not a direct consequence of a CT Page 5306 guilty plea.
Accordingly, the petition is denied.
HONORABLE HOWARD SCHEINBLUM SUPERIOR COURT JUDGE