[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 9, 1997
On September 22, 1996, defendant Michael L. was issued a misdemeanor summons for drowning two trapped raccoons allegedly in violation of General Statutes § 53-247 (a), "Cruelty to animals." On January 31, 1997, defendant filed a motion to dismiss the prosecution pursuant to Practice Book § 815(8), alleging that said statute is unconstitutionally vague, and also § 815(5), alleging that there is insufficient evidence to justify continuing the information and placing him on trial.
Although not stipulated, the facts in this matter are not disputed. Defendant is the owner of a pest elimination company and is a licensed nuisance wildlife control operator ("NWCO") pursuant to General Statutes § 26-47 (b). That statute charges the Commissioner of Environmental Protection with adopting regulations which "define the scope and methods for controlling nuisance wildlife." The regulations so adopted provide that, "[n]uisance wildlife control operators may use cage traps, box traps, padded leg-hold traps in the burrow of a wild animal, other nonlethal methods, or shooting to alleviate nuisance situations caused by . . . raccoons . . ." Regs., Conn. State Agencies § 26-47-1(d).
On the date in question, defendant, operating as a nuisance wildlife control officer, trapped two raccoons deemed to be a nuisance by a customer. A nuisance wildlife control officer is encouraged to use nonlethal control practices, including relocation, for most nuisance species. However, the Commissioner has banned relocation of raccoons by control officers during 1996 CT Page 3638 due to the continued threat of rabies. Since defendant had trapped raccoons, he was required to destroy them within 24 hours as a condition of his license. See NWCO Policies and ProceduresBooklet, pp. 6-9, as amended by the "1996 NWCO Licenses Memorandum," both attached to defendant's memorandum. Failure to destroy the trapped raccoons may have subjected defendant to criminal sanctions or loss of his license pursuant to Gen. Stat. § 26-47 (c).
Thus, having been called by a landowner to remove two raccoons from his or her property, defendant was required by law to destroy the raccoons within 24 hours. The regulations clearly allowed defendant to shoot the raccoons, but defendant possessed no guns, so he destroyed the animals by drowning them in the trap.
Upon complaint and investigation, including consultation with the West Haven Animal Control Officer Judy Rettig, the police issued defendant a misdemeanor summons based on the officer's belief that probable cause existed that defendant had cruelly killed an animal in violation of General Statutes § 53-247
(a). This statute creates criminal liability for "(a) Any person who overdrives, drives when overloaded, overworks, tortures, deprives of necessary sustenance, mutilates or cruelly beats or kills or unjustifiably injures any animal . . ." General Statutes § 108(a) defines "animal" to include "all brute creatures and birds."
Defendant first argues that this statute is impermissibly vague when applied to the facts of his case, and is thus unconstitutional and the charge should be dismissed pursuant to Practice Book § 815(8). A party attacking a validly enacted statute bears the burden of proving its unconstitutionality beyond a reasonable doubt and the court must indulge in every presumption in favor of the statute's constitutionality. State v.Breton, 212 Conn. 258, 269 (1989).
"A statute must give fair warning in order to enable a person to know what conduct he must avoid and must establish minimum guidelines to govern law enforcement. `A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law,' Connally v. General Construction Co.,269 U.S. 385, 391 (1926)," State v. Eason, 192 Conn. 37, 46 (1984), CT Page 3639 quoting from State v. Pickering, 180 Conn. 54 (1980).
In considering whether a statute is vague, and therefore unconstitutional, the courts have recognized that "laws may be general in nature so as to include a wide range of prohibited conduct. The constitution requires no more than a reasonable degree of certainty," U.S. v. Petrillo, 332 U.S. 1, 7-8 (1947), as quoted in State v. Checuti, 173 Conn. 154, 160 (1984). "References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain the statute's meaning to determine if it gives fair warning," State v. Pickering, 1780 Conn. 54, 62-3, as quoted inState v. Eason. 192 Conn. 37, 46 (1984). It is not necessary, therefore, that a statute list all the precise actions prohibited by it. Id., 47.
Webster's New World Dictionary, 3rd College Edition, defines "cruel" as "deliberately seeking to inflict pain and suffering; enjoying others' suffering; without mercy or pity" and "causing, or of a kind to cause, pain, distress, etc." The term "cruelty" is defined as "willful infliction of physical pain or suffering upon a person or animal, or of mental distress upon a person." InState v. Breton, when called upon to construe the term "especially cruel" in the capital felony context, the Connecticut Supreme Court found that the term "cruel" requires an element of intentional or wanton or vindictive infliction of pain or torture above and beyond that necessarily accompanying the underlying killing. State v. Breton, 212 Conn. 258, 270 (1989).
A similar judicial interpretation can be put on this statute which avoids any unconstitutional infirmity. To violate the statutory prohibition of "cruelly kills" as applied to wild animals requires an intentional or wanton infliction of pain or physical torture beyond that involved in the act of killing.
This statute contains a detailed enumeration of prohibited conduct. In the applicable portion, "cruelly beats or kills," the statute specifically requires an element of "cruelty," as that term is commonly used and understood, to describe what conduct is prohibited. Accordingly, defendant has failed to meet his burden of proving the statute void for unconstitutional vagueness.
The defendant next challenges the sufficiency of the state's evidence under Practice Book § 815(5). See also General Statutes § 54-56. Here, the court is called upon to determine CT Page 3640 whether the evidence, viewed most favorably to the state, is sufficient to justify a finding of guilt beyond a reasonable doubt. State v. Morrill, 193 Conn. 602, 611 (1985); State v.Steinmann, 20 Conn. App. 599, 601 (1990).
It is undisputed that the raccoons were nuisance wildlife that defendant had to kill within 24 hours. Thus, the issue here is whether the state has proffered sufficient evidence that a jury could find beyond a reasonable doubt that killing nuisance raccoons by drowning is to "cruelly kill."
On this issue, the State offered the testimony of Judy Rettig, the Animal Control Officer for the City of West Haven. She testified that intentional drowning is considered cruel because it unnecessarily inflicts 10-12 minutes of distress, panic and struggling for air as the animal dies. She also cited the American Veterinary Medical Association's published opinion that "drowning is an inhumane form of euthanasia." She further testified that more humane forms of killing, acceptable as euthanasia for nuisance wildlife, are available including shooting, lethal injection by a veterinarian, or use of a hyperbaric chamber. These methods are acceptable forms of wildlife euthanasia in that the killing is either swifter or less painful or both.
Defendant argues that drowning nuisance raccoons cannot constitute a violation of the animal cruelty law because trappers can lawfully drown raccoons without penalty. Nuisance wildlife control officers are compelled by law to satisfactorily complete the DEP's Trapper Education Course, in which they art instructed in the proper use of drowning traps as the preferred method of trapping fur bearing animals, including raccoons. Get Set toTrap, a Trapper Education Handbook, Chapter 3, "Trapping Ethics and Responsibilities," annexed to defendant's brief. Defendant also points out that none of the more acceptable methods of killing wildlife were readily available to him on a Sunday.
To resolve this clash between differing opinions as to what is "cruel" to wildlife, the court is obliged to interpret and apply the laws of this state in a consistent manner and to strictly construe the criminal law in favor of the defendant. Taking all of the State's evidence as true, all that the State has established is that drowning is not euthanasia and that drowning nuisance wildlife is a practice many people find highly offensive. However, the State has failed to present sufficient CT Page 3641 evidence from which a jury could conclude defendant's actions were criminal.
Although nuisance wildlife control operators are permitted to destroy nuisance wildlife by shooting, a recognized form of wildlife euthanasia, they are not specifically required by statute or regulation to practice euthanasia or "humane killing" of nuisance wildlife which must be destroyed. If the legislature had intended for nuisance wildlife control operators to use euthanasia or humane killing, it would have said so. Compare General Statute § 29-108e(a) to § 26-47. If the Commissioner requires nuisance wildlife control officers to use humane killing when compelled to destroy wildlife, then the regulations (§§ 26-47-1(a-f)) should be amended or clarified to specify that humane killing or recognized forms of euthanasia must be used. The present regulation which mentions only shooting cannot be read to be mandatory or exclusive, because that would prohibit other forms of animal euthanasia, an undesirable result. Further, the State has not alleged or established any violation of said regulations in this case. See General Statutes §26-47 (c).
Thus, although euthanasia or humane killing of nuisance wildlife is obviously preferred over drowning, that, in itself, does not make drowning nuisance wildlife a crime. In this state, fur bearing wildlife can lawfully be drowned by trappers for profit or sport, subject to certain regulations, without violating the statute forbidding cruelty to animals. Thus, drowning a nuisance raccoon by a nuisance wildlife control officer who is compelled by law to promptly destroy the trapped animal cannot be criminal or a "cruel" killing in violation of the animal cruelty law, Connecticut General Statutes § 53-247
(a).
The State has also failed to offer any evidence at all of intentional cruelty or any desire or wanton infliction of physical pain on these animals for personal enjoyment by defendant. Since the State cannot establish that drowning is per se cruelty to nuisance wildlife and has not established any cruel motive or intent by defendant in this case, the State cannot meet its burden of proof beyond a reasonable doubt at trial.
It is important to note that this finding is strictly limited to the facts of this case which involved raccoons trapped by a nuisance wildlife control officer which were required to by CT Page 3642 destroyed because of the threat of rabies determined to exist in Connecticut in 1996.
Accordingly, the Motion to Dismiss is granted and the information must be and is hereby dismissed.
SEQUINO, J.