## STATE OF CONNECTICUT *v.* HORACE ANDREWS
## (13069)

PETERS, C. J., HEALEY, SANTANIELLO, DUPONT and HADDEN, Js.

Argued February 3—decision released July 14, 1987

*Mark Matasavage,* with whom were *Paul Matasavage* and, on the brief, *John H. Gorman,* for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom were *John M. Massameno,* assistant state's attorney, and, on the brief, *Marcia Smith,* assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant, Horace Andrews, was charged with eight counts of criminally negligent homicide in violation of General Statutes § 53a-58,[1] and with three counts of failing to install smoke detec-

[1] "[General Statutes] Sec. 53a-58. CRIMINALLY NEGLIGENT HOMICIDE: CLASS A MISDEMEANOR. (a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle.

"(b) Criminally negligent homicide is a class A misdemeanor."

tors in violation of General Statutes §§ 29-292[2] and

---

[2] "[General Statutes (Rev. to 1985)] Sec. 29-292. (Formerly Sec. 29-40). FIRE SAFETY CODE. SMOKE DETECTION AND WARNING EQUIPMENT. CERTIFICATE OF OCCUPANCY. REVIEW OF PLANS AND SPECIFICATIONS; FEES. (a) The state fire marshal and the codes and standards committee shall adopt, promulgate and administer a fire safety code and at any time may amend the same. The regulations in said code shall provide for reasonable safety from fire, smoke and panic therefrom, in all buildings and areas adjacent thereto except in private dwellings occupied by one or two families and upon all premises except those used for manufacturing, and shall include provision for smoke detection and warning equipment in residential buildings designed to be occupied by two or more families for which a building permit is issued on or after October 1, 1976, and in new residential buildings designed to be occupied by one or more families for which a building permit for new occupancy is issued on or after October 1, 1978, to provide Level Four Protection, as defined in the 1974 edition of Standard Number Seventy-four of the National Fire Protection Association. Said regulations shall provide the requirements for markings and literature which shall accompany such equipment sufficient to inform the occupants and owners of such buildings of the purpose, protective limitations and correct installation, operating, testing, maintenance and replacement procedures and servicing instructions for such equipment and shall require that smoke detection and warning equipment which is installed in such residential buildings shall be capable of sensing visible or invisible smoke particles, that the manner and location of installing smoke detectors shall be approved by the local fire marshal or building official, that such installation shall not exceed the standards under which such equipment was tested and approved and that such equipment, when activated, shall provide an alarm suitable to warn the occupants, provided each hotel, motel or inn shall install or furnish such equipment which, when activated, shall provide a visible alarm suitable to warn occupants, in at least one per cent of the units or rooms in such establishment having one hundred or more units or rooms and in establishments having less than one hundred units or rooms, it shall install or furnish at least one such alarm.

"(b) No certificate of occupancy shall be issued for any residential building designed to be occupied by two or more families for which a building permit is issued on or after October 1, 1976, or any new residential building designed to be occupied by one or more families for which a building permit for new occupancy is issued on or after October 1, 1978, unless the local fire marshal or building official has certified that said building is equipped with smoke detection and warning equipment complying with the fire safety code.

"(c) Detailed plans and specifications of structures subject to the state fire safety code may be submitted to the state fire marshal for review and a determination concerning compliance with the state fire safety code. The

29-295[3] and in violation of Connecticut State Fire Safety Code § 11-1.8.1.[4] After a trial to the court, the defendant was found guilty on all counts, was sentenced to a total effective term of one year, execution suspended after nine months, with three years probation, and was fined $500 on each of the eight counts of criminally negligent homicide. The defendant now appeals from the judgment of conviction.

The trial court, in its oral memorandum of decision, found the following facts: The defendant, at all relevant times, owned a three story apartment building at 901 North Main Street in Waterbury. During the late evening hours of November 10, 1984, or the early morning hours of November 11, 1984, a fire broke out in the second floor apartment. The fire, which started in a living room chair, was caused by some sort of "discarded smoking materials," and smoldered before igniting. The fire was not discovered until approximately

state fire marshal shall develop a schedule of fees for reviewing such plans and specifications, which schedule shall provide for fees payable to the state treasurer in amounts of not less than ten dollars nor more than one hundred dollars, depending upon the complexity of the review.

[3] "[General Statutes] Sec. 29-295. (Formerly Sec. 29-43). PENALTY FOR VIOLATION OF CODE. Any person who violates any provision of the fire safety code shall be fined not less than two hundred nor more than one thousand dollars or imprisoned not more than six months or both."

[4] "[Connecticut State Fire Safety Code (Rev. to 1981)] 11-1.8 Smoke Detection and Warning Equipment.

"11-1.8.1 In each guest room, suite or sleeping area of hotels, motels, lodging or rooming houses, and dormitories, and in each dwelling unit within apartment houses and one- and two-family dwellings, smoke detectors in addition to those required elsewhere in this code shall be provided as follows:

"Each such guest room, suite, sleeping area or dwelling unit shall be provided with a minimum of one approved smoke detector installed in a manner and location approved by the local fire marshal and the responsible building official. When actuated, the detector shall provide an alarm suitable to warn the occupants within the individual guest room, suite, sleeping area, or dwelling unit.

"Smoke detectors required by this section shall provide protection in accordance with NFPA-74/1978, and the documents required therein shall be furnished."

1:30 a.m. when David Thompson, an occupant of the second floor apartment, awoke, coughing because of the smoke. By the time Thompson had discovered the fire, it was well past the smoldering phase, and the heat and flames were so intense that he could not enter the kitchen. Thompson attempted to arouse the rest of the occupants of the apartment and stated that had he been aware of the fire earlier, he would have been able to lead other members of the apartment to safety. Of the nine occupants living in the second floor apartment, five perished in the fire, the cause of death for each being asphyxia due to smoke inhalation.

Anna Mitchell, an occupant of the third floor apartment, became aware of the fire when she heard scuffling on the second floor and someone yelling "Fire!" Mitchell opened the front hallway door of her apartment, but was confronted with black smoke, heat and flames. She then went to the back hallway door, but was again faced with smoke, heat and fire. Although Mitchell escaped, three of the seven occupants of the third floor apartment died from asphyxia due to smoke inhalation. Mitchell also testified that had she been alerted to the fire earlier, she would have had the opportunity to lead the other occupants of the apartment to safety. The apartment building was not equipped with smoke detectors.[5]

The trial court found that smoke detectors are designed to detect fires before persons become aware of them, and consequently, provide an early warning system for the detection of fires. Because smoldering fires take longer to reach intense proportions than fires of an explosive nature, the court concluded that had there been smoke detectors in the second and third floor apartments, the occupants would have been warned of

---

[5] There was no evidence introduced at trial, however, that a building permit was issued for the defendant's building on or after October 1, 1976.

the fire before it reached the level of intensity when first discovered by Thompson and Mitchell.

The court also found that the defendant knew or should have known that smoke detectors were required by the state fire safety code because he had received notice from the Waterbury health department regarding other properties he had owned, informing him that smoke detectors were required in those buildings. The court then determined that by not installing smoke detectors in the building located on 901 North Main Street, the defendant had violated Connecticut State Fire Safety Code § 11-1.8.1. Accordingly, the court found the defendant guilty of failing to provide smoke detectors in violation of General Statutes §§ 29-292 and 29-295 and in violation of Connecticut State Fire Safety Code § 11-1.8.1.

The trial court also found the defendant guilty on all eight counts of criminally negligent homicide in violation of General Statutes § 53a-58. Initially, the court reasoned that the defendant had both a statutory duty, imposed by the state fire safety code, and a common law duty to install smoke detectors in his apartment building, and had breached those duties by failing to do so. The court further reasoned that the state had proved beyond a reasonable doubt that the defendant's negligence rose to the level of criminal negligence. Citing the conditions of the building, the inexpensive cost and relative ease of installing smoke detectors, and the increased chance of death from fire in buildings which do not have smoke detectors, the court concluded that the defendant had failed to perceive a substantial and unjustifiable risk of death and that such a failure was a gross deviation from the standard of care that a reasonable person would observe in the same situation. Additionally, the court held that the defendant's failure to install the detectors was the proximate cause of the victims' deaths. Accordingly, the court concluded

that the defendant was criminally negligent as defined by General Statutes § 53a-3 (14).[6]

Prior to trial, the defendant filed a motion to dismiss, claiming, inter alia, that the state fire safety code's enabling act was unconstitutionally vague and that the state could not prove, as a matter of law, that the defendant was guilty of criminally negligent homicide for failing to install smoke detectors. The trial court denied the defendant's motion in its entirety. At the close of the state's case, the defendant unsuccessfully moved for a judgment of acquittal, claiming that the state had failed to prove beyond a reasonable doubt that the defendant had caused the victims' deaths.

The defendant now appeals claiming that: (1) the pertinent statutes defining criminal culpability for violations of the state fire safety code are unconstitutionally vague and in violation of his right to due process;[7] (2) the state fire safety code and General Statutes § 29-292 do not require that smoke detectors be installed in the defendant's building because no building permit was issued for the building on or after Octo-

---

[6] "[General Statutes] Sec. 53a-3. DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . .

"(14) A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

[7] The defendant argues that General Statutes § 29-292, which provides that the fire marshall and the codes and standards committee may amend the fire safety code at any time, and General Statutes § 29-296, which states in part that "the state fire marshall may grant variations or exemptions from . . . any regulation issued under the provisions of section 29-292," are unconstitutionally vague because they allow for the arbitrary and discriminatory enforcement based upon the subjective opinions of the state fire marshall. The defendant, however, has neither sought an exemption or variance pursuant to § 29-296 nor has pointed to an amendment which has allowed for arbitrary enforcement against him.

ber 1, 1976; (3) statutorily mandated inspections and notice of code violations must precede the enforcement of the fire safety code and its underlying criminal sanctions; (4) the trial court erred in denying the defendant's motion for acquittal because he did not grossly deviate from the standard of care of a reasonably prudent person; (5) the court erred in denying the defendant's motion for acquittal because the defendant's conduct was not the proximate cause of the deaths of the victims; and (6) the court failed to disqualify itself after ruling on the defendant's pretrial motions to dismiss. In accordance with our recent holding in *State* v. *White,* 204 Conn. 410, 528 A.2d 811 (1987), we find error.

There is error, the judgment of the trial court is set aside and the case is remanded with direction to render judgment of not guilty.