[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, has appealed from a final decision of the Department of Human Resources (DHR) revoking her family day care home registration. The Superior Court originally dismissed the appeal for lack of subject matter jurisdiction resulting from the omission of a citation from her appeal documents. The Appellate Court affirmed the decision of the trial court in a per curiam opinion. That decision, however, was reversed on appeal to the Supreme Court, which concluded that, because the appeal had been served pursuant to General Statutes § 4-183(c)(1) no citation was necessary. The case was remanded to the Appellate Court and in turn remanded to the Superior Court with direction to deny the motion to dismiss and for further proceedings. The case has been referred to the undersigned state trial referee by Maloney, J., to comply with the directive of the Supreme Court. Accordingly, the CT Page 7657 motion to dismiss filed by DHR has been denied. The parties have filed their briefs on the merits of the appeal and have been heard in oral argument.
The incident that precipitated the revocation of the plaintiff's permit occurred on June 22, 1990, when the plaintiff's ten year old stepson committed an act of sexual abuse on a four year old boy who was in the care of the plaintiff at her home that day. (F. 14-17) The four year old boy told his mother about the incident and she telephoned the plaintiff to discuss it. (F. 18) During their discussion, the mother and the plaintiff decided not to report the incident. (F. 19) A few days later, however, the mother who had been a DCYS employee and was aware that General Statutes § 17a-101 (formerly § 17-38a) and the regulation (Conn. State Agency Reg. § 17-31q-19(i)) required that any incident of child abuse, including sexual abuse, be reported "immediately" to the proper authorities, decided that the matter should be reported. (F. 20) She told the plaintiff of her decision and the plaintiff informed DCYS of the incident on June 28, 1990. (F. 20, 22).
DCYS conducted an investigation of the incident and other aspects of the plaintiff's operation of the day care center at her home from July 3, 1990 to July 10, 1990. (F.22-35). The Commissioner of DHR summarily suspended and proposed to revoke the plaintiff's family day care registration in a letter dated July 25, 1990. (R. 3) The plaintiff promptly requested a hearing which was held in September, 1990. The hearing officer rendered a final decision revoking the plaintiff's family day care home registration on December 7, 1990. The plaintiff filed her appeal on January 17, 1990.
The plaintiff has briefed the following claims of error in the administrative decision: (1) the conclusion that the plaintiff violated C.S.A. Reg. § 17-31q-19 (i) by failing to report the child abuse incident until six days after it had occurred is flawed by the absence of a definition of the term "child abuse" that would clearly apply to the incident of June 22, 1990; (2) the hearing officer misinterpreted C.S.A. Reg. § 17-31q-19(h)(2) and (3) to impose absolute liability on day care providers regardless of fault by concluding that the plaintiff had CT Page 7658 violated those regulations; (3) the failure of the plaintiff to comply with C.S.A. Reg. § 17-31q-14(k), which requires a day care provider to notify the commissioner of additional household members within five working days of such change, is not an adequate basis for revocation; (4) some of the findings of fact made by the hearing officer are not supported by the evidence; and (5) the home day care registration should have been reinstated on condition that the plaintiff's two stepsons would no longer remain in the home, as proposed by her at the hearing.
C.S.A. Reg. § 17-31q-19(i) provides:
 "The provider shall report actual or suspected child abuse or neglect of any child to the nearest office of the Department of Children and Youth Services as mandated by Section 17-38a and 17-38b of the Connecticut General Statutes. An oral report shall be made immediately by telephone or otherwise to the State Commissioner of the Department of Children and Youth Services or his representative, or the local police department, or the state police, to be followed by a written report as required by law.
The regulation parallels General Statutes § 17a-101
(formerly § 17-38a) which contains a similar reporting requirement and applies, inter alia, to "any person paid for caring for children in a day care center who has reasonable cause to suspect or believe that any child under the age of eighteen has had physical injury or injuries upon him . . . by a person given access to such child by such responsible person. . . or is in a condition which is the result of maltreatment such as, but not limited to, . . . sexual abuse."
The plaintiff disputes the conclusion of the hearing officer that the June 22 incident constituted "sexual abuse" on the grounds that there is no evidence that the four year old victim suffered any injury and that the perpetrator was a ten year old child, not an adult. This argument borders on the frivolous. The plaintiff does not contest the victim's narrative of the incident as detailed in the finding (F. 17). It is clear that the facts as detailed indicate commission of the crime of sexual assault CT Page 7659 in the first degree, a Class B felony, in violation of General Statutes § 53a-70(a)(2), except that the age of the offender in this case excuses him from criminal responsibility. The physical acts described constitute fellatio, which is expressly included in the definition of "sexual intercourse" in General Statutes § 53a-70b(a)(1). When a child has been the victim of such a crime as defined by the legislature it is utter nonsense to contend that it has not been subjected to "sexual abuse" or "child abuse" and that the reporting requirements of C.S.A. Reg. § 19-31(Q) 19(i) and of the statute are inapplicable. The hearing officer's conclusion that the plaintiff violated the regulation by failing to report the incident in a timely manner is reasonable and is supported by substantial evidence.
 II
The hearing officer concluded that the plaintiff had violated the following provision of C.S.A. Reg. § 17-31q-19(h) (2): "The provider shall not engage in nor allow anyone else to engage in sexual activity with day care children". He also found a violation of the following provision of C.S.A. Reg. § 17-31q-19(h)(3): "The provider shall be responsible for supervision of the day care children at all times while in the facility, indoors or outdoors" The plaintiff maintains that these provisions should not be interpreted to impose responsibility on day care providers for occurrences that have not resulted from their misconduct or neglect. The court agrees with this contention.
The findings of the hearing officer do not indicate that the plaintiff had any reason to believe that her ten year old step-son had any inclination or propensity to molest other children sexually prior to the telephone call from the mother of the four year old victim on June 22, 1990. (F. 23-37). The lack of such a finding is fatal to the hearing officer's conclusion that the plaintiff violated the provision of C.S.A. Reg. § 17-31q-19(h)(2) that the "provider shall not . . . allow anyone . . . to engage in sexual activity with day care children". A person cannot be deemed to "allow" an occurrence that he has no reason to suspect will happen. In permitting her ten year old son, for the purpose of changing his clothes, to enter the CT Page 7660 bedroom where the victim was napping, the plaintiff cannot reasonably be said to have allowed him to engage in sexual activity with the victim. (F. 15).
Similarly, the conclusion that regulation § 17-31q-19
(h)(3) requires constant visual supervision of a day care child, is flawed. The first sentence of the regulation, quoted previously, does make the provider responsible for supervision of children in a day care facility at all times while they remain in the facility. It does not, however, define the kind of supervision that is necessary. The second sentence is more specific: "Removal of a child from the group for disciplinary or health reasons shall be to a location where superversion under visual observation shall be maintained." The implication of this sentence is that visual observation need not be maintained unless a child is separated from the other children in the day care center for "disciplinary or health reasons". There is no evidence that the four year old victim was placed in the room where the incident occurred for any such reasons. The plaintiff placed him in the bedroom to have a nap and then returned to her kitchen in order to finish washing the dishes. (F. 15).
The conclusion that the plaintiff violated these regulations is not supported by the finding or the evidence and has resulted from a misinterpretation of the regulations that would make day care providers responsible for any mishap to a child without proof of neglect or other fault.
 III
The plaintiff does not dispute the hearing officer's conclusion that she violated C.S.A. Reg. § 17-31q-14(k), which requires a day care provider to "notify the commissioner in writing within five (5) working days of any change in circumstances which alters or affects the day care service . . . (including) additional household members." She failed to inform DCYS when new children enrolled in her day care program or when others ceased to attend. She also failed to give notice when her two stepsons, who resided in Indiana with their mother for part of each year, entered or departed from her household. CT Page 7661
The plaintiff claims that her admitted failure to comply with the notification requirements of the regulations would not justify revocation of her home day care registration. Whether this transgression of the regulations would alone constitute the substantial noncompliance with the regulations that General Statutes § 17-588(a) prescribes as a condition precedent to revocation is not the issue in this case, however, in which the decision of the commissioner is based on several grounds. (F. 46) "[The Court] must uphold the [commissioner's] decision if any of those [grounds] are sufficient to justify the action taken." Griffin Hospitalv. Commission on Hospitals of Health Care, 200 Conn. 489,489, 498 (1986). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given". Huck v. InlandWetlands Waterlands Agency, 203 Conn. 525, 539-40 (1987).
 IV
In attacking the findings set forth in the final decision, the plaintiff makes a general claim that the hearing officer gave insufficient weight to the testimony, letters and affidavits of parents of children who had been in the plaintiff's care prior to suspension of her day care registration. All of them, including the mother of the four year old child whose sexual abuse had precipitated the DCYS investigation, supported reinstatement of the plaintiff's registration. It is elementary, however, that the credibility of witnesses and the weight to be given their testimony rests wholly within the discretion of the administrative tribunal. Lawrence v. Kozlowski, 171 Conn. 705,708 (1976). The hearing officer refers to this testimony but he was not sufficiently persuaded by it. (R. 17).
The plaintiff also attacks findings 15, 19, 21, 27, 30, 37, 38, 39, 44, 45 and 46 as "not supported by the weight of the evidence. In two findings (F. 15 and F. 37), the term, "unsupervised" is used when it would be more precise to state that the children referred to were not being visually observed by the plaintiff. Another finding (F. 38) is similarly flawed by equating "suspension", with visual observation. The remaining findings are supported by substantial evidence and the corrections sought therein CT Page 7662 would be of no significance.
 V
Finally, the plaintiff claims that the commissioner should have reinstated her registration on the condition that her two stepsons, whose ages were ten and fourteen years, not reside or be present on the premises of her home while it was being operated as a day care center without the approval of DHR.
After the June 22, 1990 sexual abuse incident was reported to DCYS on June 28, 1990, the department conducted an investigation in which it was discovered that the plaintiff's ten year old stepson had been involved as a victim in several other sexual abuse incidents perpetrated by two older boys, including his fourteen year old brother. (F. 26, 28, 29). These incidents had begun in 1987 and may have affected the behavior of the plaintiff's ten year old stepson, for which he had received psychiatric counseling, (F. 31). Even while the investigation was proceeding, the ten year old engaged in an incident of sexual contact with the plaintiff's three year old son. (F. 32, 33) The hearing officer concluded that both of the plaintiff's stepsons had a "relatively long history of child abuse, both as perpetrators and as victims," and that "their presence in a registered family day care home would present unreasonable and unforeseeable risks to the health, safety, and welfare of day care children." (F. 45).
Under the agreement with his first wife, the mother of his two sons, the husband of the plaintiff had custody of them during the summer school vacation and also during other school vacations. They ordinarily attended school for the remainder of the year in Indiana, residing with their mother. (F. 6) The fourteen year old boy, however, had attended school in Bloomfield during the 1989-90 school year and had returned to Indiana for the summer to be with his mother. His younger brother, who had attended school in Indiana that year, had come to Bloomfield to spend the summer with his father.
In her application for reinstatement of her home day care registration, the plaintiff offered to send her younger stepson to Illinois to reside with his paternal CT Page 7663 grandparents so that neither he nor his older brother would have any contact with the day care children. She expressed her intention to bring him back to her household later under an arrangement that would insure his absence from the home while day care children were on the premises. At the hearing the plaintiff testified that, if DCYS were to require that her younger stepson be excluded from her home entirely, she would "have to stop doing day care". (T. III, 9/18/90 pp. 93-94).
The hearing officer gave five reasons for rejecting the plaintiff's proposal for conditional reinstatement of her day care registration:
 "First, the Appellant has stated unequivocally that conditional reinstatement is not a real option for her, because she intends to bring her stepsons back into her home in the near future. As I have indicated previously, there is substantial evidence on the record to establish that the presence of the Appellant's stepsons on the premises of a day care home is inconsistent with the health, and welfare of day care children.
 "Second, conditional reinstatement would require the Appellant to voluntarily comply with the regulations and to enforce the hearing order, for the Department does not have sufficient staff to closely monitor whether the Appellant is in compliance with a conditional reinstatement order. In light of the fact that the Appellant was unable or unwilling to comply with the regulations in the past, one must question whether she will be able and willing to comply in the future.
 "Third, the statute and regulations do not expressly authorize conditional reinstatement orders. Section 17-31t of the Connecticut General Statutes authorizes suspension and revocation. Being a tribunal of limited authority, an administrative agency must act strictly within its statutory authority. Castro v. Viera, 207 Conn. 420, 428 (1988); State v.CT Page 7664 White, 204 Conn. 410, 419 (1987). Therefore, there may be insufficient legal authority to issue and enforce a conditional reinstatement order.
 "Finally, conditional reinstatement of the registration at this particular time would not be in anyone's best interest. It would merely postpone the inevitable closing of the Appellant's family day care home, place the State in the difficult position of having to enforce a conditional reinstatement order, and compromise the safety of the day care children.
 "As a postscript, I note that the ideal solution is to assure the safety of the children and keep the day care home open. Unfortunately, in some cases, as in this one, that ideal is unrealistic or unascertainable; for the risks to children are too great and the acts of non-compliance too serious. In balancing the competing interests, therefore, it is important to remember that sexual abuse often results in long-term physical or psychological damage to children, and that the provider's property interest in the registration must be reconciled with the Department's mandate to assure that family day care homes are safe for children. In the final analysis, the scale must tip in favor of assuring the safety of the day care children."
Of these reasons, the first two are adequate to support the refusal to accept the plaintiff's proposal for conditional reinstatement. The first reason is based upon the plaintiff's statement that she would not continue her work as a day care provider if her stepsons could not live her home. She did propose a program for avoiding contact between her younger stepson and the day care children that would allow him to remain at home after those children had left the premises. That proposal, however, would require surveillance by DCYS, which would have the serious responsibility of insuring that no repetition of the June 22, 1990 incident will occur. There is no basis for disputing the inability of DCYS to provide sufficient staff to monitor enforcement of the conditions proposed by CT Page 7665 the plaintiff.
The court has concluded that there is sufficient evidence to support the finding of substantial noncompliance with C.S.A. Reg. § 17-31q-19 (i) requiring a provider to report actual or suspected child abuse "immediately" to DCYS. The regulation parallels General Statutes § 17a-101(b), which applies specifically to "any person paid for caring for children in a day care center" and calls for a fine not to exceed $500 for its violation. It would trivialize the statute to hold that noncompliance with it does not constitute substantial noncompliance with a regulation incorporating its terms. General Statutes § 17-588(a) provides that "[t]he commissioner of human resources shall have the discretion . . . to suspend or revoke the registration if the person who owns, conducts, maintains or operates the home . . . fails to substantially comply with the regulations adopted pursuant to section 17-585. . . ." The commissioner was not obliged to revoke the plaintiff's permit for this violation, but the statute plainly gave him the discretion to do so. The court concludes that there was no abuse of that discretion in view of the practical unfeasibility of the alternatives proposed by the plaintiff.
It is ordered that judgment enter dismissing the appeal.
David M. Shea State Judge Referee